In the Matter of the Construction of the Will of CARL F. FISCUS, Deceased. JOHN G. LESSWING, Appellant; HERBERT E. FISCUS, Respondent.

Fourth Department, July 5, 1974.

*Merwin, Lesswing, Rothfus & Burman* ((*Charles J. McDonough* of counsel), for appellant.

*Joseph A. Contino* for respondent.

*Louis J. Lefkowitz, Attorney-General* (*Eugene Panfil* and *Ruth Kessler Toch* of counsel), for charitable beneficiaries.

DEL VECCHIO, J. An executor-trustee appeals from a Surrogate's decree (1) approving the settlement of a will construction proceeding agreed to by the life beneficiary of the testamentary trust, the remainderman and the Attorney-General, (2) directing the executor to pay the life beneficiary the sum of $25,000 and (3) terminating the trust, the balance of the estate assets to be distributed pursuant to further order of the court.

On December 8, 1970 Carl F. Fiscus executed his last will and testament which had been prepared by his friend and attorney, the appellant herein. The will consisted of three articles, the first of which directed payment of debts and expenses and the third named appellant as executor with "full power * * * to manage and control" the estate property "for the purpose of carrying out the provisions of this my Last Will and Testament". The second article provided as follows:

"All of the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to my friend and attorney, JOHN G. LESSWING, as Trustee, however, to hold, administer and distribute for the use and benefit of my brother, HERBERT E. FISCUS of Buffalo, N. Y., and I authorize and direct my said Trustee to pay my brother, HERBERT E. FISCUS, the sum of Five Hundred ($500.00) Dollars quarterly out of the corpus, including principal and interest of the trust, until all the monies in said trust have been expended. Should my said brother become ill or incapacitated and incur medical, hospital and nursing expenses or in need by reason of which circumstance or circumstances said quarterly payments in the discretion of my said Trustee are inadequate to take care of such additional expenses, my said Trustee may increase said quarterly payments to such an extent as he or she may deem necessary.

"Upon the death of my brother, HERBERT E. FISCUS, whatever monies or other property, real or personal, he would be entitled to receive under this my Last Will and Testament, if

living, I give, devise and bequeath unto the UNITED CHURCH OF CHRIST HOME, now located at 1190 Amherst Street, Buffalo, N. Y.

" Should my friend, JOHN G. LESSWING, die before me, or having acted as Trustee shall for any reason cease to act before the termination of said trust, or in the event that he dies before all of the funds in the trust I have set up for my brother, HERBERT E. FISCUS, have been paid to him, I then nominate, constitute and appoint RUTH M. PAGELS, of Clarence, New York, secretary to JOHN G. LESSWING, as Trustee in his place and stead, and it is my request that neither JOHN G. LESSWING nor RUTH M. PAGELS be required to furnish any bond in the performance of their duties as Trustee."

On October 3, 1972 the testator died, survived by his brother Herbert, a nephew and two grandnephews.

On October 30, 1972, no objection having been filed, the will was admitted to probate and letters testamentary and of trusteeship were issued to appellant.

On March 19, 1973 the life beneficiary of the trust filed a petition to determine the validity, construction and effect of the will as a whole and particularly to obtain a determination whether the second article was actually a trust for his benefit or a direct bequest to him or whether the trust failed because of the " vesting over " clause so that the estate passed by intestacy.

At a hearing held before the Surrogate on June 8 it was asserted on behalf of petitioner that no trust had been effectively created. The United Church of Christ Home (Home) contended that a trust did exist under which petitioner would be entitled to the whole estate if the fiduciary saw fit to use it during the brother's lifetime, but that whatever was left would go to the Home. The court rejected a suggestion that appellant, as draftsman of the will, testify, stating that he would not permit a lawyer to testify as to what the words that he had put down on paper meant. Without having made a decision as to the construction of the will, the Surrogate held a further hearing on November 20, 1973 at which the Attorney-General also appeared. At the hearing proof was presented that the life beneficiary was 74 years of age, in very good health, living on Social Security and also receiving a retirement pension; that the trust involved about $80,000; that the charitable remainderman, the United Church of Christ Home, would prefer to receive its money immediately because it was in a building program and it was too expensive to borrow money and that if the proceeding could be settled it would benefit the charity. The Home then indicated that it had discussed the matter with the Attor-

ney-General and was willing to pay petitioner $25,000 for a release of his interest in the trust. Thereupon, the petitioner, the Home and the Attorney-General consented to such a settlement. However, counsel for the trustee stated that there had been no consultation with the trustee about the settlement and that he would not agree to it, and pointed out that the construction proceeding was still pending and unresolved, that the terms of the settlement did not reflect the intention of the testator and that the trust had been very clearly set up. Despite the objections of the fiduciary, the Surrogate, noting that if the life beneficiary should go into a nursing home there might be nothing left for the charitable remainderman in consequence of the exercise of the power of invasion, said that he would approve the settlement and direct the executor to execute the necessary documents. In reference to the pending construction proceeding, the court stated, " I am upholding the Will and deciding that the construction is that there is enough question in the construction that I will approve the settlement and I will direct the Executor to execute the necessary documents and if he fails to do it I will remove him." From the order implementing this decision the fiduciary appeals.

The life beneficiary and the Attorney-General, on behalf of the charitable remainderman, would uphold the settlement which the court has imposed over the objection of the executor-trustee on the ground that compromise agreements are a favored disposition in contested probates and that the same principle should apply in the case of challenges to a trust, citing *Matter of Smith* (75 Misc 2d 895).

The difficulty with this argument is that the present case fails to meet one of the requirements set down in *Smith* for approval of a settlement — viz., that there be a bona fide controversy with doubt as to the eventual result. Here, no such bona fide controversy or doubt can exist. The intention of the testator — which is " the prime consideration of all construction proceedings " (*Matter of Larkin*, 9 N Y 2d 88, 91) — is crystal clear from the second article of the will, that is, a trust was to be created and administered so that the testator's brother would receive $500 quarterly for the balance of his life, together with any further sums — even to the extent of all the trust property — that the trustee might deem necessary to cover expenses of the beneficiary as provided in the will; on the brother's death any remainder was to be distributed to the United Church of Christ Home. No other construction finds even colorable support in the testamentary language and design.

The Surrogate seemed to recognize this when he said, "There isn't much question — the clause is well drawn because Mr. Lesswing knows what he is doing." It follows that there can be no bona fide dispute as to the construction of the second article of the instrument and no doubt as to the ultimate disposition of the life beneficiary's challenges to the trust. There was therefore lacking a necessary requirement for the settlement (*Matter of Smith, supra*); the fiduciary, who as executor had been vested by the testator with full control of the latter's property for the purpose of carrying out the provisions of the will and who as trustee was under an "absolute and positive duty * * * to defend the life of the trust whenever it is assailed, if the means of defense are known to him" (*Cuthbert v. Chauvet*, 136 N. Y. 326, 332), properly rejected the compromise. "As stated in *Matter of Higgins* (205 Misc. 385, 391), 'So long as the trust purpose as a practical matter can be accomplished, it should be.' 'Its duration may not be foreshortened by judicial fiat or by any act of the interested parties' (*Matter of Duignan*, 85 N. Y. S. 2d 846, 851, citing cases)". (*Matter of Bowers*, 2 Misc 2d 482, 484–485.)

The settlement approved by the Surrogate's decree represents a substantial departure from the patent intention of the testator. It was conceded upon argument of the appeal that the testator intended that only his brother and the Home should receive funds from the estate. However, if the settlement were effectuated and the brother should die one year later, any unexpended portion of the $25,000 lump sum paid to him from the estate assets would descend to his distributees, and the intended remainderman, the charity, would receive $23,000 less than what would have passed to it under the testamentary provision. Furthermore, while the testator obviously intended that the whole of his estate should be available in the first instance for the needs of his brother as described in the instrument if required, the alleged settlement would limit the funds so available to $25,000 — less than one third of the estate. Finally, the testator intended that the bulk of his estate should be managed by his trustee and that no substantial amount of it should be delivered into the hands of his brother, who was 70 years old when the instrument was drawn, thus relieving him of the attendant responsibility and burden of management. The settlement would place on the brother the onus of control of a sizable sum of money and deprive him of the managerial skills and talent of the attorney and friend chosen by the testator. From the remarks of the Surrogate, it appears that his decision to impose

the settlement was motivated by an unwarranted preferential concern for the United Church of Christ Home and by a desire to assure that the charity would not be deprived of all the trust assets by their total expenditure for the testator's brother in the event nursing home care became necessary, despite the fact that the testator had given priority to the brother's needs by his testamentary disposition. The court had no authority to compel the executor to carry out the compromise which the latter properly disapproved. (*Matter of Corbin,* 227 App. Div. 87, 90; *Matter of Geffen,* 25 Misc 2d 734, 736.)

The case of *Matter of O'Keeffe* (167 Misc. 148) may be distinguished on the ground that there the settlement agreement had been entered into before the will was probated in order to avoid a threatened will contest and had been acquiesced in by the parties, including the party then challenging the agreement, for a period of four years.

In *Matter of Cherkoff* (9 A D 2d 557), also urged by respondents, the beneficiaries under a will had agreed prior to probate on a specified distribution of the estate and had stipulated by a duly executed instrument that the will should not be probated. Despite that agreement, on application by an executor the court probated the will, but then relieved the executor of any further responsibility, recognizing and impliedly approving the distribution agreed upon by the beneficiaries. So far as appears, no trust was involved in that case, and the court simply accepted what was within the power of the beneficiaries to do immediately after distribution of the estate — to redistribute the assets in whatever manner they might choose. It should be observed that, in the case of a redistribution by legatees of outright gifts, this is not a frustration or contravention of the testator's intent, for, by making immediate, unrestricted bequests, he vests in them absolute control of his property such that they can dispose of it as they see fit. If such legatees make their arrangements for redistribution prior to actual delivery to them of the decedent's assets, but which can become effective only after the assets have been transferred out of the estate of the decedent, they simply do what he enabled them to do, and are not acting inconsistently with or in frustration of his intent.

On the other hand, the same is not true when, as in the present case, the result of giving effect to an agreement for redistribution between the objects of the testator's bounty would be to terminate prematurely a trust measured by the life of one beneficiary, during which the testator has vested legal title,

management and control of the assets in someone other than the life beneficiary or remainderman. The testator who has created such a trust and conferred a power of invasion upon the trustee cannot be held to have intended or contemplated unrestricted control of his property by his beneficiaries. To permit the life beneficiary and the remainderman to effect an immediate termination of the trust, to vest absolute control of a substantial portion of the trust in the intended life beneficiary, to deprive that beneficiary of the managerial skill of the trustee and of the trustee's capacity to allocate even all of the trust assets to certain of the beneficiary's expenses if required, would work a clear and improper frustration of the testator's intent and a contravention of his right to prescribe the disposition of his estate. (*Matter of Phipps*, 2 N Y 2d 105; *Asche* v. *Asche*, 113 N. Y. 232; *Matter of Carney*, 73 Misc 2d 579; *Matter of Tietz*, 39 Misc 2d 895; *Matter of Bowers*, 2 Misc 2d 482, *supra; Matter of Higgins*, 205 Misc. 385, 390, *supra*; 4 Scott, Trusts [3d ed.], §§ 337, 337.1.) To permit the offices of the Surrogate to be used to accomplish such improprieties by judicial approval of the settlement here proposed would be a breach of trust with the decedent.

Accordingly, we now do what the Surrogate should have done (CPLR 5522; *Society of New York Hosp.* v. *Burstein*, 22 A D 2d 768) and construe the second article of the will as creating a valid trust for the benefit of testator's brother with discretion in the trustee to invade, and upon the brother's death the balance remaining to go to the United Church of Christ Home.

The decree should be reversed and order granted so construing the will.

MARSH, P. J., MOULE, CARDAMONE and MAHONEY, JJ., concur.

Decree unanimously reversed on the law with costs to all parties appearing and filing separate briefs, payable out of the estate, and order granted construing the second article of the will as creating a valid trust.