In the Matter of the Estate of JOHN J. BIRCH, Deceased. EVELYN CREMER et al., Executrices of MILDRED S. BIRCH, Deceased, et al., Appellants; MOHAWK NATIONAL BANK et al., Respondents.

Third Department, January 22, 1976

*Wager, Taylor, Howd, Brearton & Kessler (Michael W. Kessler* of counsel), for Evelyn Cremer and another, appellants.

*George J. Camino* for John J. Birch, Jr., appellant.

*O'Loughlin, Leonard, Lewis & Bendall (Richard M. Leonard* of counsel), for Mohawk National Bank, respondent.

*Wemple, Daly & Casey (Ralph D. Semerad* of counsel), for the First Reformed Protestant Dutch Church of Schenectady, N.Y., and another, respondents.

*Louis J. Lefkowitz, Attorney-General (Joseph A. Romano* and *Ruth Kessler Toch* of counsel), respondent *pro se.*

*Jacob M. Frankel,* respondent *pro se.*

*Per Curiam.* Decedent, John J. Birch, died on August 15, 1970 and his will dated January 4, 1970 was admitted to probate on August 25, 1970. After making a bequest of $1,000 to his son and $500 to another legatee, by the "Fourth" paragraph of his will decedent gave, devised and bequeathed to his wife: "the life use of property located at 26 Washington Avenue, Schenectady, New York, and the contents therein, for her sole use and occupation, and on her death, the said property shall belong to the FIRST REFORMED CHURCH OF SCHE- NECTADY, NEW YORK, provided and if the authorities of the said Church shall, within a year after the death of my said wife,

establish said home at 26 Washington Avenue, and the property connected therewith, together with furniture and fixtures contained therein and such property as there may be in the said home, except securities and moneys and evidences of debt which may be therein at the time of my death or the death of my said wife, as a parsonage for the Senior Minister of said Church."

By the "Fifth" paragraph, he provided that: "In order that there be no question about the distribution of my estate so as to meet the requirements of Section 5-3.3 of the Estates, Powers and Trust Law, I direct that my Executrix divide my personal estate, as distinguished from my real property, into two (2) equal parts." One half of his personal estate was to be delivered to the Mohawk National Bank, as trustee, in trust to pay the income to decedent's wife for life. Decedent's wife was given the right to consume the principal of said trust fund. This trust was to be known as the "Marital Trust" and was to be free of any and all expenses involved in the administration of the estate, such expenses to be paid from assets not contained in this trust. The wife also had an absolute power to dispose of this share of the estate. Upon the death of decedent's wife, he directed that what remained of such trust fund should be held by his trustee to "use the income thereof for the care and maintenance of the real property which I have herein given to the First Reformed Church for the purposes set forth herein."

The other half of decedent's personal estate was to be held in trust by the Mohawk National Bank to pay the income to his wife for life, with the privilege of invading the principal. Upon the death of the decedent's wife what was left of the trust property was to remain in trust to use the income:

"insofar as necessary to support and maintain the real property which I have given to my wife for her life, and which shall become the property of the First Reformed Church of Schenectady, New York, as designated in Paragraph 'Fourth' of this Will.

"It is my further will and direction that if the First Reformed Church shall not accept said property under the conditions that I have set forth herein, and that the property shall become the property of the Classis of the Reformed Church of America of Schenectady, New York, for the purpose of establishing a home for retired ministers who shall have served at least five years in the Classis of the Reformed

Church of America of Schenectady, New York, then the funds given to the Mohawk National Bank, as trustee, under paragraphs (a) and (b) of this Will shall be used to maintain said home under the same terms and conditions as set forth herein for the maintenance thereof as a parsonage for the Senior Minister of said Church."

Decedent's wife died on June 15, 1972 and her will, executed on May 26, 1972, was admitted to probate on November 29, 1972. In the meantime, the Mohawk National Bank was issued letters of trusteeship under the decedent's will on June 26, 1972. By her will decedent's wife exercised the general power of appointment over the "Marital Trust" for the benefit of her estate. As a result, funds available for the operation and support of the real property were greatly diminished. In addition, the wife's estate claimed and took all household furnishings and contents of the property known as 26 Washington Avenue. The church did not establish a home for the senior minister within one year of the wife's death, and the trustee has not established a home for the retired ministers of the Classis.

Petitioner, the First Reformed Protestant Dutch Church of Schenectady, New York, thereafter sought court approval of a compromise agreement executed by all beneficially interested in the estate of decedent. According to that petition, the building located at 26 Washington Avenue was in need of immediate major and expensive reconstruction and the funds available for the care and maintenance of such real property had been so greatly reduced as to make it impracticable to carry out the decedent's testamentary plan. The proposed agreement provides, in substance, that the church and the Classis would be given one half of the remaining trust property, including the real property located at 26 Washington Avenue and 4 West Front Street, outright, with no restrictions; appellant John J. Birch, Jr. would receive one quarter and the estate of decedent's wife, the other quarter.

The settlement was opposed by the trustee named in the will and the Attorney-General. The Surrogate decreed that:

(1) all pending matters be consolidated;

(2) the corporate fiduciary and the Attorney-General have standing to contest the compromise;

(3) a valid charitable trust was established by the testator and that efforts should be made to carry out his intent;

(4) that the property of 26 Washington Avenue does not fall into intestacy and that additional proof be taken to establish whether the property at 4 Front Street is included within the charitable devise;

(5) the compromise is disapproved;

(6) ordinary debts are to be paid from the general estate; the part "A" (marital trust) trust is to be free only from ordinary expenses, not extraordinary expenses.

(7) "that the other matters pending, including objections to the account, attorneys' fees and commissions, the disposition of property known as 4 Front Street, and whether the Church forfeited its rights under the one-year limitation provision, all are to be determined at a later date after further proof and hearings."

The executrices of the decedent's estate and his son, John J. Birch, Jr. have appealed. They contend that the Surrogate erred in rejecting the compromise agreement or alternatively that the Surrogate should have found that any gift made to or for the charitable institutions had lapsed because the restrictions and conditions of such gifts had not been complied with. As to these two contentions, it is also argued by the appellants that the Surrogate erred in consolidating the proceedings and finding that the Attorney-General and the trustee had standing. It is also contended by the appellants that the Surrogate erred in not exempting the part "A" or "Marital Trust" from extraordinary expenses.

Initially, we find no abuse of discretion by the Surrogate in consolidating the proceeding before him. We also hold that the Surrogate properly determined that the Attorney-General and the trustee had standing. The trustee has a legal obligation to defend the trust (*Matter of Fiscus,* 45 AD2d 235, 239; Bogert, Trusts and Trustees [2d ed], § 581, p 206), and, therefore, is a proper party hereto. The Attorney-General, likewise, has a duty to represent the beneficiaries where there are dispositions for religious and charitable purposes (EPTL 8-1.1, subd [f]), and is, therefore, a proper party.

We also agree with the Surrogate that the will is clear that the decedent intended to create a trust and a valid charitable trust was thereby created. Since there can be no bona fide controversy or doubt as to the ultimate disposition of any attack on such trust, a necessary requirement for compromise

settlement is lacking *(Matter of Fiscus, supra),* and it cannot be approved.

The decedent's will is not unmistakably clear as to his intent regarding the payment of estate taxes, and, therefore, we agree with the Surrogate that the estate taxes were not directed to be paid from a source other than the "Marital Trust". (EPTL 2-1.8.) We cannot agree, however, that the "Marital Trust" is not freed from all expenses of administration, whether ordinary or extraordinary. The language used by decedent clearly evinces an intent that this trust was not to be burdened with *any* administration expenses, including extraordinary, and, accordingly, the decree must be modified in this regard.

In attempting to persuade this court that the present record conclusively establishes that the charitable trust has failed with the result that it would lapse and become distributable as in intestacy, the appellants have caused the cy pres doctrine to be discussed upon this appeal. However, it is apparent from the decretal paragraphs of the Surrogate's decree as summarized hereinabove that he has not yet made any final determination as to whether or not the First Reformed Church of Schenectady has caused the gift to it to lapse, and it is abundantly certain that while the Surrogate in his decision has indicated that he felt that the cy pres doctrine might become applicable, he has not yet made any final determination in that regard.

The decree appealed from finally disposes of certain issues raised in the proceedings before the Surrogate, but it is not a final decision insofar as the charitable trust and/or gift is concerned.

It is urged by some members of this court that we should now determine whether or not the gift to the church has lapsed; and if such gift has lapsed whether or not the remaining alternative charitable trust has become impossible to perform; and in the latter event whether or not the cy pres doctrine would be applied or applicable; and if the cy pres doctrine is to be applied, the specific manner and method in which it should be applied in this situation. The record establishes that all of these latter questions have not yet been finalized by the Surrogate and that he has decreed it necessary to hold further proceedings for the purpose of obtaining facts and making final determinations which would be applicable to all of these questions. If this court were to presently

make any of these decisions upon the record before it, we would be acting *de novo* as a Surrogate and would in no way be performing the function of an appellate court. Procedurally the questions relating to the possible lapse of any part of the charitable gift or the alternative trust are not now properly before us and any application of the cy pres doctrine would not only be premature, it would be without any sound factual basis based upon the concept of adversary proceedings.

The decree should be modified, on the law and the facts, by amending the Sixth decretal paragraph thereof so as to direct that the "Marital" or part "A" "Trust" is to be free from all expenses of administration, whether ordinary or extraordinary, and, as so modified, affirmed, without costs.

SWEENEY, J. (dissenting in part). The only significant issue upon which there is disagreement in the court is whether the gift to the church lapsed by failure to comply and whether the cy pres doctrine should be applied. The present record is more than adequate to decide these questions and they should be answered in the affirmative.

From a reading of the will it is evident that the expressed purpose of the charitable trust was to benefit the senior minister of the church or retired ministers of the Classis. It is further evident on this record that the circumstances have so changed since the making of the will that the trust cannot be carried out according to the provisions contained in the will. Whenever it appears that circumstances have so changed since the execution of an instrument making a disposition for charitable purposes as to render impracticable a literal compliance with the terms of such disposition, the court may decree that such disposition be administered and applied in such manner as in the judgment of the court will most effectively accomplish the general purposes free from any specific restriction or direction contained therein. (EPTL 8-1.1, subd [c].) A prerequisite to the application of this cy pres doctrine is that the court find a primary intention of the testator to devote his property to a general charitable purpose. Here, we find from the will as a whole that decedent manifested a general intention to devote his property to charitable purposes. There is a gift over if the church fails to provide a home for the senior minister, a direction for his trustee to establish a home for retired ministers of the Classis, with no conditions. There is an absence of a reversionary clause. Furthermore, decedent specifically referred to EPTL 5-3.3

which places a limit on gifts to charities. Having taken care of his wife as completely as he did, his main intent thereafter was to devote his property to charity. This is also evidenced by the token gift to his son. We conclude that the cy pres doctrine should be invoked. (*Matter of Syracuse Univ. [Hendricks],* 4 NY2d 744; *City Bank Farmers Trust Co. v Arnold,* 283 NY 184; *Matter of Neher,* 279 NY 370; *Matter of Rupprecht,* 271 App Div 376.)

We further conclude that the gift of the property to the church failed because the conditions attached thereto were not fulfilled. The trustee thereupon succeeded to such gift to establish a home for retired ministers of the Classis. In view of the apparent impracticability to establish such home at this time, the properties at 26 Washington Avenue and 4 West Front Street (clearly, in our opinion, intended to be "the property connected therewith" under paragraph "Fourth" of the will)' should be sold as soon as practicable by the trustee under the will in order to prevent any further loss in connection therewith, and the net proceeds added to the corpus of the trust provided for in paragraph "Fifth". The income from such trust funds should be applied by the trustee toward the support and maintenance of retired ministers who shall have served at least five years in the Classis of the Reformed Church of America of Schenectady, New York. In our opinion, this would most effectively accomplish the general purpose of decedent's will.

On this record, there is clearly no basis for the Surrogate's having to hold further proceedings to obtain more facts in order to decide these questions. To do so would only prolong the already protracted litigation of this case and cause further delay and waste of estate assets plainly meant by the testator for charitable purposes. The Supreme Court and the Surrogate's Court have concurrent jurisdiction in matters involving decedents' estates (NY Const, art VI, §§ 7, 12) and the Appellate Division has the same jurisdiction as the Supreme Court (NY Const, art VI, § 4, subd k). Although the Supreme Court generally will exercise its concurrent jurisdiction sparingly, under the special circumstances presented herein, in our view, this is a case within the exception to such general rule. (See, e.g., *Bankers Sur. Co. v Meyer,* 205 NY 219, 224.)

The judgment should be further modified and the matter remitted to the Surrogate's Court for further proceedings in accordance herewith.

HERLIHY, P. J., KOREMAN and LARKIN, JJ., concur in *Per Curiam* opinion; SWEENEY and KANE, JJ., dissent in part in an opinion by SWEENEY, J.

Decree modified, on the law and the facts, by amending the Sixth decretal paragraph thereof so as to direct that the "Marital" or part "A" "Trust" is to be free from all expenses of administration, whether ordinary or extraordinary, and, as so modified, affirmed, without costs.