Louis D. Laurino, J.
This is an application to entertain a petition allowing petitioner, an adult adoptive person, access to the sealed record of his own adoption pursuant to section 114 of the Domestic Relations Law.
The statute in question (Domestic Relations Law, § 114) *133 provides that all "papers” pertaining to an adoption shall be kept as a permanent "sealed” court record and that no "person shall be allowed access to such sealed records * * * except upon an order * * * of the court in which the order [of adoption] was made”. The statute further provides that "No order for disclosure or access and inspection shall be granted except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct.”
The purpose of this law cannot be understood in isolation from the broader social purposes of the adoption process. The concept of adoption, whereby the legal relationship between biological parents and child are terminated and a new legal relationship between child and adoptive parents is created has been utilized by society since the Code of Hammurabi in 2000 b.c.; however, adoption was not recognized in Anglo-American common law (see discussion Huard, Law of Adoption: Ancient and Modern, 9 Vand L Rev 743). It exists in this State solely by force of statute (see L 1873, ch 830) enacted to further the State’s public policy interest in providing a child with a substitute family through the adoption process when for some reason the natural relationship between parent and child fails. Pursuant to this legislative scheme, the court as an agent of the State must be satisfied that "the best interests of the adoptive child” will be promoted by adoption and in order to so satisfy itself, the court must necessarily make intensive inquiry into many intimate details in the lives of parties involved — the natural parents, the adoptive parents and any other person connected with the adoption.
Confidentiality and the sealing of records mandated by section 114 of the Domestic Relations Law, promotes the broad legislative purposes in several ways. It encourages and facilitates investigation into factors relevant to planning adoption by preventing the public disclosure of embarrassing personal facts about the parties involved. Sealed records assure that natural parents will not be able to locate the child and interfere in his relationship with his adoptive parents. Confidentiality also protects adopted children who are illegitimate from any possible stigma they might otherwise have to bear because of their birth. Confidentiality assures the natural mother "who has given birth to a child born out of wedlock and finds that she cannot properly take care of the child, that instead of secreting the child or placing it with persons *134 haphazardly, if she wishes to permit suitable, desirous and qualified persons to adopt the infant, her indiscretion will not be divulged” (People v Doe, 138 NYS2d 307, 309). In short, confidentiality assures all persons connected with the adoption that the records will be and remain sealed and secret (see Lupack, Sealed Records in Adoptions: The Need For Legislative Reform, 21 Catholic Lawyer 211, 212-213; Burke, Adult Adoptee’s Constitutional Right To Know His Origins, 48 So Cal L Rev 1196, 1197-1200).
As an aside, it should be noted that the concept of confidentiality of adoption records is not unique to New York law, but rather it is the rule in all but four of the United States; the exceptions being Alabama (Code of Ala, tit 27, §4), Kansas (Kan Stat Ann, § 59-2279), South Dakota (SDCL, §§ 34-25-16.4, 25-6-15) and Virginia (Code of Va, §§ 32-353.19, 63.1-236).
Viewing the present application in the sociological perspective outlined above, the court notes that the petitioner adoptive person alleges as "good cause” to obtain his own sealed adoption record, the fact that he is suffering from a psychological disorder caused by not knowing his true identity and that obtaining such knowledge would be "beneficial to his present emotional state”. Also, petitioner requests that notice of this application be given solely to his adoptive parents. It is the opinion of the court, however, that a determination of what constitutes "good cause” pursuant to the public policy purpose of section 114 of the Domestic Relations Law must include not only a determination of the rights of the adoptive child and his adoptive parents, but also necessarily must include a determination of rights conferred by this statute on the natural parents of the child, together with any common-law rights available to them. Therefore, it follows that the natural parents of petitioner are necessary parties to this proceeding.
The court is cognizant of the fact that its approach to this issue is novel and that research has disclosed no reported decision on which the natural parents of an adopted child were considered necessary parties in a proceeding to determine "good cause”. (See, e.g., Matter of Ann Carol S., NYLJ, Aug. 13, 1974, p 12, col 6; Matter of Maxtone-Graham, NYLJ, April 7, 1975, p 17, col 4.) However, the court is also cognizant of the fact that natural parents are members of a class of persons which section 114 of the Domestic Relations Law seeks to protect and that their rights can only be protected by notice and opportunity to litigate. In fact, the statute provides *135 for "due notice to the adoptive parents and to such additional persons as the court may direct” on the determination of "good cause”. (Emphasis added.)
This conclusion raises a unique problem. Since the very issue to be litigated involves the continued anonimity of the natural parents and thus they cannot be identified during the pendency of the proceeding, the traditional methods of service on them are unavailing and inadequate. SCPA 311, however, provides that the court has the power to designate a person to be served with process on behalf of a "person under a disability” when it appears to the court’s satisfaction to be "in the interest of such person” under disability. Included within the definition of "person under disability” is an "incapacitated person” (SCPA 103, subd 37), which that statute defines as including "Any person who for any cause is incapable adequately to protect his rights” (SCPA 103, subd 24). Surely the natural parents, whose identity is secret and cannot presently come forward to protect their rights, fit the statutory definition of "incapacitated person”. Moreover, the person so designated by the court pursuant to SCPA 311 has the same "powers and duties as a guardian ad litem” and as such is not merely an agent to accept service of process but as part of his duties will be expected to determine the present whereabouts of the natural parents; counsel them as to their rights and, in general, represent and protect their interests. In this respect, the court will examine the sealed record and reveal to the designated person, in camera, the name and last known address of his wards.
Accordingly, the petition is entertained and the court directs that a citation be issued to petitioner’s adoptive parents and to Michael K. Feigenbaum, Esq., as a person designated to represent the petitioner’s natural parents.