OPINION OF THE COURT
Bertram R. Gelfand, S.
This is a proceeding pursuant to section 114 of the Domestic Relations Law, commenced by an adult adoptee for leave to gain access to the sealed records respecting her adoption on good cause shown. The petitioner’s adoptive father is deceased. The adoptive mother joins in this application. The court had directed upon the filing of the petition herein that notice of the application be given to the Attorney-General in view of the issues raised as to the constitutionality of section 114 of the Domestic Relations Law. Notice was also given to the Commissioner of Health who has custody of the original birth record that had been sealed by virtue of the order of adoption dated March 4, 1941.
At the initial hearings on this matter an issue had been raised as to the rights of the natural parents of the petitioner to participate in this proceeding. The Attorney-General has taken the position that the natural parents are necessary parties in this proceeding; that a guardian ad litem should be appointed to represent them and, if possible, to find them and apprise them of their rights. (See Matter of Anonymous, 89 Misc 2d 132.)
The pertinent portion of section 114 of the Domestic Relations Law states that: "No person shall be allowed access to such sealed records and order and any index thereof except upon an order of a judge or surrogate of the court in which the order was made or of a justice of the supreme court. No order for disclosure or access and inspection shall be granted *830 except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct. ” (Emphasis added.)
The provisions in the law for sealing adoption records were enacted in 1924 when the court was given the discretion to seal all of the records except the order. The order was filed and recorded in the county clerk’s office (L 1924, ch 323). In 1938 the sealing of all records was made mandatory and the procedure for access to the records was enacted. Initially, the only notice on an application to unseal the file that was required was that to be given to the adoptive parents. By chapter 1038 of the Laws of 1968 the procedures with reference to the processing of applications for agency adoptions (as distinguished from the private placement adoptions) had been drastically changed to provide for the withholding from the adoptive parents of certain personal information respecting the adoptive child, e.g., surname of the child. In this same chapter 1038, section 114 was amended to give the court discretion to serve notice of the application for access to the adoption records "to such additional persons as the court may direct.” From the history of section 114 of the Domestic Relations Law, it is clear that the only mandated necessary parties to an application to open the records are the adoptive parents. The surviving adoptive parent here has joined in this application. The involvement of other persons in the proceeding is within the sound discretion of the court. They may be brought in by notice given to them in such form and such manner as the court may direct (SCPA 313).
It is contended by petitioner that as a matter of law the court lacks jurisdiction to direct notice of this proceeding to the natural parents. Petitioner argues that since the statute in existence at the time of the adoption in 1941 contained no provision for notice to "such additional persons as the court may direct” the natural parents had no possible right to notice when they surrendered the child for adoption and accordingly cannot now have any greater rights than they had at the time of the adoption. The validity of this argument is dependent upon whether the 1968 amendment was procedural or substantive. It is concluded that the 1968 amendment allowed the court to require notice to such additional parties as it may direct as it relates to natural parents is no more than a codification of a procedure for protecting the existing equitable posture of natural parents. Proceedings are gov-
*831 erned by the statutes in existence at the time of the proceeding (Matter of Clayton v Clement, 33 NY2d 386, 390; Lazarus v Metropolitan El. Ry. Co., 145 NY 581, 585; Mobil Oil Indonesia v Asamera Oil [Indonesia], 56 AD2d 339; McKinney’s Cons Laws of NY, Book 1, Statutes, § 55). It is accordingly concluded that, upon this application, as a matter of law, the court has the discretion to direct notice "to such additional persons” as it may deem advisable.
There is no doubt that a natural parent is a person whose rights can be profoundly affected by the unsealing of a record of a long-completed adoption. The sudden appearance of a long-surrendered child can be an event either joyfully greeted by a natural parent or a shattering trauma totally destructive of the life the parent may have established in the intervening years since giving up the child for adoption. The right to privacy and anonymity of a surrendering parent in an adoption cannot be totally disregarded, if natural parents wishing to surrender their children for adoption are to be encouraged to do so through legitimate sources. Accordingly, it must be recognized that, if possible, upon an application to unseal adoption records, since a natural parent’s rights may be affected, ideally the views of such parents should be considered in the proceeding. However, in deciding whether a natural parent should become a party to the proceedings the bounds of feasibility and practicality cannot be ignored. Where it appears from the record that the natural parents or parent can be readily located, the novel procedure outlined by my respected colleague, Surrogate Laurino, in Matter of Anonymous (89 Misc 2d 132, supra), presents a practical procedure for considering the rights of the natural parents without disclosing their identity. However, where the information in the file, as in the instant case, reflects that the whereabouts of the natural parent, as well as even her true identity, could not be readily ascertained, if at all, without an extensive search, the requirement of notice to such person and the appointment of a guardian ad litem in their behalf would serve no purpose. It would burden the proceeding with the additional expense of a guardian ad litem who is not likely to be in a position to significantly contribute to a determination of the proceeding.
Another pragmatic impact of appointing a guardian ad litem in every case even where it is not likely the natural parent can be located, would be to impose upon the court in *832 every application to unseal an adoption file, the burden of locating a long absent natural parent, even before there has been even a prima facie showing as to the existence of good cause to unseal the adoption file. It is noted that the presence of the Attorney-General in the proceeding provides a litigant who is taking a position opposite to petitioner so that all proof is subject to examination in an adversary atmosphere. Accordingly, on the facts in the instant case, in the exercise of discretion, it is determined that the issues may proceed to trial without notice to the natural parents or the appointment of a guardian ad litem on their behalf.
The matter is set down for a hearing on the issue of good cause to be held on February 15, 1978 at 9:30 a.m. Notice of hearing is to be served on all parties on or before February 3, 1978.