■ In the Matter of the Estate of ALBERT J. BECKLEY, Deceased.

FRANCISCAN FATHERS FRIARY OF CHRIST THE KING SEMINARY, Appellant; FRANCISCAN FRIARY OF ST. BONAVENTURE UNIVERSITY, Respondent.—Decree insofar as it denies motion for approval of the agreement of compromise unanimously reversed and motion granted, and decree further modified in accordance with memorandum and otherwise affirmed, without costs, and matter remitted for entry of decree approving the compromise agreement and for such other proceedings as may be necessary. Memorandum: The Franciscan Fathers Friary of Christ the King Seminary appeals from a decree in a proceeding commenced by the executrix for a construction (SCPA 1420) of the following clause in a will: "I give, devise and bequeath my entire residuary estate as aforesaid or then remaining to and unto the Franciscan Fathers, Christ the King Seminary, St. Bonaventure University, Olean, New York, with the request that High Masses be said for the repose of my Soul and the repose of the Soul of my said wife". At the time the will was executed there were two separate friaries (both subdivisions of the Franciscan community) established and operating on the campus of St. Bonaventure University in Olean: the Friary of St. Bonaventure and appellant, the Friary of Christ the King Seminary. Shortly before the testator's death on October 21, 1974, appellant moved (on Sept. 1, 1974) to the newly established campus of Christ the King Seminary in East Aurora. The questions to be resolved in the construction proceeding were whether the testator had intended to make the residuary bequest to both friaries or to only one of them and, if the latter, which one. On February 2, 1976, after several court appearances and conferences with the Surrogate, the two friaries and St. Bonaventure University entered into a written stipulation under the terms of which the bequest would be paid over jointly to the Friary of St. Bonaventure University and appellant "in compromise of the construction proceedings." Subsequently, the Attorney-General and the executrix joined in the request that the agreement be approved. After several other proceedings including a hearing at which testimony was taken as to the intention of the testator, the Surrogate in a 36-page typewritten decision (reported at 92 Misc 2d 965) denied the request to approve the compromise agreement and found that the testator had intended to benefit only the Friary of St. Bonaventure University. In so doing, the Surrogate relied, *inter alia,* on *Matter of Wadsworth* (142 Misc 717, affd 236 App Div 712). This was error, and the motion for approval of the compromise should have been granted. Here, unlike *Matter of Wadsworth (supra),* where the beneficiaries sought by compromise agreement to rewrite the provisions of a will so as to avoid the unambiguous direction that the residuary be left in trust to a charity, there was clearly a bona fide disagreement over the interpretation of the will. Both friaries were and are officially recognized subdivisions of the Franciscan community. Both were in existence on the St. Bonaventure campus in Olean at the time of the execution of the will and until shortly before the testator's death. The disputed clause contains a reference *in haec verba* to both Christ the King Seminary and St. Bonaventure University. Thus, it appears to be an entirely reasonable interpretation of the will that both friaries were intended to share in the bequest. This conclusion is reinforced by the testimony of the attorney-scrivener to the effect that neither he nor the testator had been aware at the time the will was drawn that there were two separately existing friaries located at St. Bonaventure University and that the testator had intended to benefit the Franciscan fathers located at St. Bonaventure without regard to the identity of the particular subdivision to which they belonged. Under the circumstances here, where there existed honest differences of opinion as to the

intended meaning of the will, where the interpretation agreed upon by all the interested parties would appear to effectuate the intended charitable purpose of the testator, where that interpretation appears to have been as compatible with the intention of the testator as any other, and where the adoption of the compromise would have avoided further litigation and expense, it was an abuse of discretion of the Surrogate to reject it. "Agreements of compromise in estates made in the absence of bad faith, imposition, fraud or collusion, have consistently received the approval and ratification of our courts and have been given vigorous support by them. [Citations omitted.]" *(Matter of O'Keeffe,* 167 Misc 148, 149; *Fisher v Fisher,* 253 NY 260; *Slater v Slater,* 208 App Div 567, affd 240 NY 557; *Matter of Smith,* 75 Misc 2d 895, app dsmd 44 AD2d 851; see, also, *Matter of Fiscus,* 45 AD2d 235, affd 38 NY2d 874.) We hold further that the Surrogate's appointment of a guardian ad litem for unknown persons pursuant to SCPA (103, subd 37; 403, subd 2) was unwarranted. It is fundamental that a guardian ad litem may not be appointed for a person under a disability until the court has secured jurisdiction over him (21 Carmody-Wait 2d, NY Civ Prac, § 124:18; *Ingersoll v Mangam,* 84 NY 622; *Van Williams v Elias,* 106 App Div 288, 294-296; *Higgins v Blauvelt,* 49 Misc 2d 327). It is undisputed in this case that the so-called "unknowns" were not duly cited, and so were not before the court. Therefore, the court was without jurisdiction to appoint a guardian ad litem. Furthermore, the two entities which could possibly qualify as beneficiaries were known (the Friary of St. Bonaventure and the Friary of Christ the King Seminary) and were represented by the Attorney-General (EPTL 8-1.1, subd [f]). Under these circumstances the guardian ad litem could perform no function of any practical use or purpose and his appointment was unnecessary *(Matter of Linda F. M.,* 92 Misc 2d 828). Moreover, there can have been no possible justification for the continuance of the guardian's appointment during the appeal proceeding after the guardian had made his report and the Surrogate had made his decision, when it was a matter of record that there was no unknown person or party for the guardian to represent. Finally, the Surrogate erred in holding that the bequest constituted an honorary trust for the purpose of the celebration of masses. The words "with the request that High Masses be said" were precatory and created no trust. *(Edgar v Waldo,* 227 NY 656; *Post v Moore,* 181 NY 15, 18-20; *Matter of Bouvier,* 257 App Div 665.) (Appeal from decree of Cattaraugus Surrogate's Court—will construction.) Present—Moule, J. P., Dillon, Hancock, Jr., Denman and Witmer, JJ.