OPINION OF THE COURT
Chief Judge Cooke.
This appeal focuses on the circumstances under which adopted persons can later discover the identity of their natural parents by obtaining access to the sealed adoption records. Section 114 of the Domestic Relations Law provides that such disclosure shall be granted only for “good cause”. For the reasons that follow, the courts below were correct in concluding that petitioner here failed to meet this standard.
Petitioner was born on July 19, 1940, and was adopted on March 4, 1941 pursuant to an order of the Surrogate’s Court of Bronx County. She did not learn of her adoption until 1971. In 1977, after attempting without success to locate her natural parents by other means, petitioner began this proceeding to obtain access to her sealed adoption records. She alleged various psychological problems stemming from her ignorance of her background. After a hearing, the Surrogate found that petitioner had failed to establish good cause for unsealing the records. The Appellate Division affirmed for the reasons stated by the Surrogate.
Section 114 of the Domestic Relations Law places great emphasis on the confidential nature of adoption records.[1] The section provides that they “shall be sealed and secret”. *239 It prohibits anyone, including the adoptive parents’ attorney, from disclosing the child’s original surname to the adoptive parents. It authorizes punishment for contempt of court for certain breaches of confidentiality occurring in the handling of the records. The section permits access to the records only by court order “on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct.”
This confidentiality serves several purposes. It shields the adopted child from possibly disturbing facts surrounding his or her birth and parentage, it permits the adoptive parents to develop a close relationship with the child free from interference or distraction, and it provides the natural parents with an anonymity that they may consider vital (People ex rel. Scarpetta v Spence-Chapin Adoption Serv., 28 NY2d 185,195, cert den sub nom. De Martino v Scarpetta, 404 US 805). The State’s interest in fostering an orderly and supervised system of adoptions is closely tied to these interests of the parties involved (Matter of Anonymous, 89 Misc 2d 132, 92 Misc 2d 224).
Although petitioner, now an adult, has obtained the approval of her adoptive mother for her attempt to gain access to the adoption records and her adoptive father is deceased, the natural parents retain a potentially strong interest in maintaining their anonymity. It thus is essential that petitioner make a showing of good cause. A natural parent understandably can feel deep effects when the records of an adoption are opened years after the child was surrendered for adoption. Although the sudden reappearance of the child may often be a source of great pleasure to the natural parent, in other cases it may be a destructive intrusion into the life that the parent has built in the years since the adoption. It may be the source of much discomfort. In some cases, it may even open the way for the child or others to blackmail the natural parents by threatening to disclose embarrassing circumstances surrounding the birth.
Petitioner alleges that her inability to discover the identity of her natural parents has caused psychological problems that have broken up a marriage and hampered development of her artistic and musical creativity. The courts below, however, found that any problems she had encoun *240 tered in these areas were not credibly connected to her lack of knowledge of her natural parents’ identities. To the extent that she was troubled by her lack of knowledge, the courts found that this sprang from mere general curiosity about her parentage, rather than from a concrete and compelling need. The record amply supports these findings.
Petitioner herself summarized her reasons for wanting access to her records as a desire “[t]o know who I am. I feel cut off from the rest of humanity. I was given birth to the same way as everyone else, but everyone else can send away $3 and get a copy of their birth certificate. I want to know who I am. The only person in the world who looks like me is my son. I have no ancestry. Nothing.” A desire to learn about one’s ancestry should not be belittled. When balanced against the interests of other parties to the adoption process, however, it cannot alone constitute good cause under section 114. This is not to say that concrete psychological problems, if found by the court to be specifically connected to the lack of knowledge about ancestry, would never constitute good cause (see Matter of Anonymous, 92 Misc 2d 224, supra). By its very nature, good cause admits of no universal, black-letter definition. Whether it exists, and the extent of disclosure that is appropriate,[2] must remain for the courts to decide on the facts of each case. Nevertheless, mere desire to learn the identity of one’s natural parents cannot alone constitute good cause, or the requirement of section 114 would become a nullity. Petitioner, therefore, has failed to meet the statutory prerequisite to gaining access to her records.
 This appeal also raises the issue of whether notice of such a proceeding should also be given to the natural parents. Although the notice provision of section 114 specifically mentions only the adoptive parents,[3] the interests *241 of the natural parents dictate that notification be given if the court finds that the petitioner has made a showing of entitlement and provided that the natural parents can be located with reasonable effort and in a manner that will not be likely to be self-defeating by revealing their identities to the adoptive parents or others. Such notice provides the natural parents with an opportunity to intervene through a representative in the proceeding and defend their interest in retaining anonymity (cf. Matter of Anonymous, 89 Misc 2d 132, 92 Misc 2d 224, supra). Because this interest may not receive full articulation in their absence, it is important that those who may be vitally affected by disclosure be given a chance, if practical, to intervene. It is possible, of course, that such notice to the natural parents would not be practical. Such was the case in this proceeding, in which the Surrogate found on the record that it would be all but impossible to locate the natural parents by reasonable efforts and that other means of protecting their interests would suffice. The Surrogate’s decision to forgo notice in this case was therefore proper. Corresponding care must also be taken to protect the privacy interests of the adoptive parents.
Finally, petitioner’s claim that section 114 is unconstitutional is rejected (see Alma Soc. v Mellon, 601 F2d 1225, cert den 444 US 995).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchs-berg and Meyer concur.
Order affirmed.

. Although the State’s first statute authorizing adoptions contained no provision for the sealing of adoption records (L 1873, ch 830), the Legislature in 1924 authorized courts to seal such records in their discretion. Once sealed, a showing of good cause was required for access (L 1924, ch 323). Since 1938, the sealing of such records has been mandatory, with access available only after a court determination of good cause (L 1938, ch 606).
Today, only a relative handful of States permit access by adopted children to adoption records without some type of demonstration of need (see Note, Adult Adoptee’s Constitutional Right to Know His Origins, 48 So Cal L Rev 1196, 1199). The Uniform Adoption Act contains a good cause requirement similar to New York State’s statute (Uniform Adoption Act, § 16, subd [2]).

. Where records are needed for a specific health-related purpose, a court may wish to consider permitting disclosure of relevant medical data in the records without revealing other material such as the identities of the natural parents (see, e.g., Matter of Chattman [Bennett], 57 AD2d 618).

. Section 114 of the Domestic Relations Law provides in pertinent part: “No order for disclosure or access and inspection shall be granted except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct.”