Bellacosa, J.
(dissenting). I dissent and vote to affirm the orders of the courts below compelling the appellant adoption agency, Louise Wise Services (LWS), to turn over the adoption records in its possession to the plaintiff.
Mr. Golan, born on November 4, 1930, was 54 years old when he initiated this action to discover medical information stemming from his biological family tree. In 1984 Golan, who was a licensed commercial pilot, developed certain medical abnormalities which prompted a denial of medical certification to exercise his pilot’s privileges. The F.A.A. medical examiner stated in an affidavit that, absent medical information on Mr. Golan’s biological family background, the examiner would not recertify him to exercise those privileges.
Thereafter, on September 9, 1984, Golan suffered a heart attack. His treating physician advised the court below that family history is significant in evaluating the risk factors of heart disease patients and, if Golan was ever going to be recertified as a pilot, some history on his natural parents would have to be obtained. The record also shows Golan’s son, an instructor pilot for the United States Air Force, would benefit from medical data concerning his biological ancestors.
When this proceeding was initiated, Golan possessed a copy of his adoption decree, knew the full name of his natural mother, the name given him at birth, and additional data concerning his natural parents including their respective ages at the time of his birth; father 24 and mother 19. Some data had been provided to Mr. Golan by LWS. In fact, LWS represented that through Golan’s own investigative efforts and its disclosure, he had all the information in the agency’s possession, other than the name of his father, his father’s college, names of his maternal grandparents, and the names of collateral relatives on his mother’s side. Among the data disclosed by LWS was the key fact that respondent’s maternal grandfather had died of heart disease in his late 50’s.
Both of respondent’s adoptive parents are deceased and his biological mother and father, if still alive, would be 75 and 80 years of age respectively. If the biological parents are still alive, LWS has indicated that a search of the city of respondent’s birth, neighboring counties, areas in adjoining States, other major metropolitan areas and the father’s college were *351 "totally unsuccessful” in leading to information about their whereabouts.
With the above facts before it, the Supreme Court ordered that Mr. Golan be permitted to examine and reproduce records relating to his adoption which are in the appellant agency’s custody, since they would "permit a search for medical records that would be relevant and important to the physical well-being and possibly to the survival of the plaintiff.” The Appellate Division affirmed, without opinion, and I would reach the same result as the two lower courts.
The two central issues are the necessity in this case for an evidentiary hearing on good cause and for notice to the biological parents.
Although I agree with the majority view that, after a preliminary showing of good cause, hearings may assist the fact finder in determining the effect on other interested parties of permitting access to confidential adoption records, I do not agree that such a hearing would be necessary in this case. Neither do I agree with the apparent restriction that adoption-records-access issues can only be resolved upon the articulation of each interest, together with the court’s observation and examination of witnesses. Finally, I believe the majority view is wrong that notice must be given to all parties, in all cases, or guardians ad litem be appointed to represent their interests.
In Matter of Linda F. M. (52 NY2d 236), we directed that the natural parents of an adopted party be given notice of efforts to seek confidential information in adoption files "if the court finds that the petitioner has made a showing of entitlement” (id., at 241). The threshold requirement of good cause, triggering this entitlement, must be satisfied pursuant to the requirements of Domestic Relations Law § 114. The notice was conditioned, however, by the proviso that the natural parents could be "located with reasonable effort” (id., at 241). There are no explicit authorities which I could find, nor are any pointed to by the majority, that erect a legal impediment to a court making a good cause finding without the knowledge of or notice to persons other than the adoptive parents. Notably, in the Matter of Linda F. M. (supra, at 241), where this court reasoned that the interests of the natural parents dictate that they be afforded the same notice which Domestic Relations Law § 114 provides for adoptive parents, provision was made for case-by-case exceptions. We noted that it is not always *352 practical to give notice, especially when, as was the situation there, the record reveals that it would be all but impossible to locate the natural parents.
I acknowledge and accept the reasons for confidentiality of adoption records noted in Matter of Linda F. M. (supra, at 239), reiterated in Matter of Walker (64 NY2d 354, 361), and again reconfirmed by the majority in this case. They constitute substantial interests in favor of carefully protecting the confidentiality of adoption records, but they must be applied to individual facts of specific cases and not be given abstract obeisance. Domestic Relations Law § 114 itself contemplates that, within the framework of these important confidentiality concerns, access to records should be permitted upon good cause shown. To require notice to all parties or the appointment of a guardian ad litem, the articulation of all parties’ interests and the observation and examination of witnesses, as in Matter of "Anonymous” (92 Misc 2d 224), is neither wise, nor necessary, nor fair. In Matter of "Anonymous” (supra), the adoptive parents defaulted in appearance and the natural parents consented to the disclosure sought by . the petitioner adoptee. Despite the default, the concession to the desired disclosure and the court’s preliminary finding of good cause, the court nevertheless appointed a guardian ad litem on behalf of the natural parents and required the taking of testimony to confirm the existence of good cause. Under such circumstances, both the appointment of the representative and the routine taking of testimony were pointless, as they would be in this case.
By no means do I suggest that the careful examination of all affected persons’ interests and the court’s observation and examination of witnesses should be dispensed with in every instance. In fact, I am satisfied with the majority view that a hearing is the preferred route, subject to dispensation where the good cause factors warrant entitlement to the records and on papers alone. In appropriate cases, Judges can direct that in addition to notice to the adoptive parents (Domestic Relations Law § 114) and notice to the natural parents or the appointment of a guardian (Matter of Linda F. M., 52 NY2d 236, 241, supra), an in-person hearing should be held. This is not one of those cases.
Here, Mr. Golan has established good cause for the disclosure of the identity of his natural parents to the satisfaction of both courts below. Unlike the merely curious adoptee in *353 Matter of Linda F. M. (supra, at 240), Mr. Golan has established substantial and uncontroverted medical and professional reasons authorizing disclosure. Moreover, on the separate issue of notice, it is fair to conclude that both courts below were satisfied that notice to the natural and adoptive parents would be impractical if not impossible and that all reasonable efforts, indeed extraordinary and persistent efforts, to locate the natural parents had been pursued. In Matter of Linda F. M. (supra, at 240-241), this court fashioned a- reasonable construction of the provisions of Domestic Relations Law § 114 by providing that the natural parents have a right to notice provided that they can be located with reasonable effort. That test has been satisfied in this case where the record reveals that LWS had, after substantial and extended effort, been unable to locate or contact the natural parents. In light of the efforts of LWS, the relatively advanced age of the natural parents, and the fact that the adoptive parents were deceased, there was good and sufficient reason for the courts below to proceed expeditiously and without additional, unnecessary procedural safeguards.
Despite what I would regard as the obvious result after applying the majority reasoning to the record, they would require notice and hearing which, in my respectfully proffered view, would be perfunctory proceduralisms. Indeed, I can think of few better cases for the application of the majority’s exception to hearing than this one, if the exception is to have real meaning. As predicates for its conclusion to require the hearing here, the majority properly expresses a desire to encourage adoptions, to protect the adoption process and to preserve the legitimate confidentiality objectives of the participants and society in general. I share those salutary objectives. Disclosure in this case on the strong papers presented and based on the manifest good cause found by two lower courts, not mere curiosity as in Matter of Linda F. M. (supra), would not undermine any of those objectives. Indeed, in spite of the balance the majority tries to strike in its rationale, its application under these facts will unnecessarily and harshly foster governmental and bureaucratic red tape against the legitimate interests of individuals.
In sum, the public policy of New York is that the confidentiality of the participants in an adoption proceeding be reasonably protected. It is my view that the courts can be trusted to *354 act rationally and flexibly when disclosure is warranted without a hearing, as they have done here. I would affirm.
Judges Simons, Kaye, Alexander and Hancock, Jr., concur with Judge Titone; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Chief Judge Wachtler concurs.
Order reversed, etc.