69 N.Y.2d 343 (1987)
Ronald T. Golan, Respondent,
v.
Louise Wise Services, Appellant.
Court of Appeals of the State of New York.
Submitted January 7, 1987.
Decided March 26, 1987.
Richard Zalk and Stephen Wise Tulin for appellant.
Ronald T. Golan, respondent pro se.
Judges SIMONS, KAYE, ALEXANDER and HANCOCK, JR., concur with Judge TITONE; Judge BELLACOSA dissents and votes to affirm in a separate opinion in which Chief Judge WACHTLER concurs.
*345 TITONE, J.
When an adopted person seeks to discover, for allegedly good cause (Domestic Relations Law § 114), confidential information concerning the circumstances of his birth, the interests of the adopted person, the adoptive parents, the biological parents and society must be balanced. In such a case, therefore, both notice to the biological parents, if possible, or a guardian appointed to represent their interests, and a hearing, where necessary, at which interested parties may appear in person or through counsel, are required before a finding of good cause may be made and the adopted person granted the relief requested.
Plaintiff was adopted in 1932 through the defendant adoption agency when he was less than 15 months old. Pursuant to plaintiff's 1983 request, defendant supplied him with all the medical and historical information it possessed concerning his biological parents, except the name of his biological father, his hometown, and the name of the college the biological father allegedly attended.[1]
Plaintiff commenced this action with a verified complaint in November 1984, seeking permission to examine and reproduce any records or reports relating to plaintiff's biological parents. At approximately the same time, he moved by order to show cause for the same relief, essentially a summary judgment motion (CPLR 3212). Apparently owing to defendant's agreement to conduct a search for plaintiff's biological mother, with the ultimate purpose of securing her permission to disclose her present whereabouts, plaintiff did not pursue the application to the court.
Upon being informed that defendant was unable to locate either of plaintiff's biological parents, plaintiff made a second motion requesting the same relief. This motion was dismissed because it was not calendared. Finally, relying on the same set of papers contained in the original November 1984 motion, plaintiff made the instant application in June or July 1985.
Plaintiff's moving papers contained affidavits executed by his attending physicians and himself. In short, the affidavits established that plaintiff was suffering from a heart condition *346 and that genetic information would be useful in his treatment and significant in evaluating the severity of his condition. In addition, the affidavits stated that plaintiff could not be certified to continue his commercial flying career without more family medical history because of the unknown nature of the risk posed by plaintiff's condition. Finally, plaintiff's affidavit stated that his adoptive parents were dead. After executing these affidavits, plaintiff suffered a heart attack and informed the court that if he was ever to be recertified as a pilot, some history on his biological parents would have to be supplied.
On these papers, Special Term found that good cause existed to grant the relief requested, in effect summary judgment, stating "the disclosure of plaintiff's [biological] father's identity would permit a search for medical records that would be relevant and important to the physical well-being and possibly the survival of the plaintiff." The Appellate Division, First Department, affirmed, without opinion. This court granted leave to appeal and stayed further proceedings pending the outcome of the appeal.
Access to confidential adoption information may be inimical to the interests of the adoptive parents, the biological parents and society. All have the strongest interest in the maintenance of anonymity. The adopted person may allege "good cause" for disclosure as opposed to mere curiosity (e.g., with affidavits "which substantiate that medical and/or psychological necessity require the opening of an adoption record for the health and well-being of the petitioning adoptive child" [Matter of Hayden, 106 Misc 2d 849, 852; see, Matter of Linda F. M., 52 N.Y.2d 236, 240, appeal dismissed sub nom. Mason v Abrams, 454 US 806]), but the wishes and needs of the adopted person must be balanced against the needs of the other parties and society. The adoptive parents need to be shielded from interference with the adoptive relationship by biological parents. Biological parents also must be assured that their privacy will not be disturbed (Matter of Walker, 64 N.Y.2d 354, 361; Matter of Linda F. M., 52 N.Y.2d 236, 239, supra). Finally, society's interest in providing children with substitute families through the adoption process (Matter of Linda F. M., supra, at 239; Matter of "Anonymous", 92 Misc 2d 224, 225), which may be damaged by disclosure, is of importance. It is these last two considerations that have received inadequate attention in this case.
The success of the adoptive process in New York clearly *347 depends upon the privacy of that process for those men and women who are confronted with the circumstance of an unwanted pregnancy or inability to provide the necessary care for their children (Matter of Best, 66 N.Y.2d 151, 155, cert denied ___ US ___, 106 S Ct 1463; Matter of Walker, supra, at 360-361). Some of these biological parents, in the wake of their difficult decision to surrender their children for adoption, might be interested to learn of the continuing welfare of the children or be anxious to correspond with the children when they become adults. It is equally probable, however, that biological parents, forced by circumstance to make the painful choice to give up their children, would find the sudden reappearance of a child a devastating intrusion into the lives and families they have constructed since that difficult period (Matter of Linda F. M., supra, at 239). We have even noted that it could lead to blackmail of the biological parents by the child or others (ibid.). As a result of biological parents' fears for their anonymity, society's interest in the adoptive process would be thwarted by rules of ready access to confidential adoption documents (see, Matter of Louis F., 42 N.Y.2d 260, 265). Similarly, the confidentiality principle generally serves the interests of the child who is placed in an adoptive home, since it assures that the integrity of the new family unit will not be disrupted by unwanted contact with the biological parents.
It is for these reasons that an application for access to confidential adoption records may be granted only after the utmost care and attention. The proper level of scrutiny essential in these cases cannot be assured without notice to all necessary parties and, in most cases, a hearing, after an initial determination that "good cause" (Domestic Relations Law § 114; see, Matter of Linda F. M., supra, at 240; Matter of Hayden, supra, at 852) is alleged in the adopted person's moving papers. Certainly, the conflict among the compelling interests of each of the parties and society and the strong public policy against access (see, People ex rel. Scarpetta v Spence-Chapin Adoption Serv., 28 N.Y.2d 185, 195, cert denied sub nom. De Martino v Scarpetta, 404 US 805; Domestic Relations Law § 114; Social Services Law § 372 [4]) is susceptible to resolution only upon the articulation of each interest and the court's observation and examination of witnesses. The court should fully explore the particular circumstances involved in the case. Factors to be weighed include, but should not be limited to, the degree of the adopted person's need for *348 disclosure, the present wishes of the adoptive and biological parents, and the potential effects upon both sets of parents and their families. These are matters which raise, at least in part, factual disputes difficult to resolve on papers alone. Thus, in cases in which a preliminary showing of "good cause" has been made on the papers, the court may hold a hearing to determine the effect of disclosure on other interested parties (see, People v Gruden, 42 N.Y.2d 214, 215; CPLR 2218). Even in the face of consent by all parties, the court must independently satisfy itself that "good cause" for disclosure has been shown and possible limitations on the use of the information have been explored before allowing access (Domestic Relations Law § 114). This process ensures that society's separate interest in the maintenance of the secrecy of adoption proceedings will not be discarded lightly. The lack of such a balanced review in this case, after the preliminary finding of "good cause", prevented the interests in retaining anonymity from being fully explored.
A court proceeding would be meaningless, however, if both sets of parents were given no opportunity to articulate their interests in maintaining their anonymity (ibid.; Matter of "Anonymous", 92 Misc 2d 224, 225, supra). Here, service was attempted neither on the adoptive parents (allegedly deceased) nor the biological parents. Domestic Relations Law § 114 allows the release of adoption records only upon notice to both the adoptive parents and such additional persons as the court may direct and a showing of "good cause".[2] In Matter of Linda F. M. (supra), we indicated that the interests of the biological parents dictated that notice to them be provided if the court finds that the petitioner has made a preliminary showing of entitlement (id., at 241). The act of providing such notice will often prove to be self-defeating, however. In such cases, where the court finds that the provision of notice will reveal the identities of the biological parents to parties from whom they should remain anonymous, it would be appropriate for the *349 court to appoint a guardian ad litem charged with making a serious attempt to inform his wards of the pending motion. If the court finds, upon the guardian's representation, that a biological parent cannot be located by reasonable efforts, or that the very act of the guardian's contact would be so peculiarly distressing to the particular biological parent because of severe and documented psychiatric problems arising from the adopted person's birth, the guardian must protect that parent's potential continuing interest in anonymity at the court proceeding (Matter of Linda F. M., supra, at 241; Matter of "Anonymous", 92 Misc 2d 224, 225, supra; see, Sam v Sanders, 55 N.Y.2d 1008, 1010). A failure to locate the biological parents after many years should not give rise to the conclusion that they no longer have an active interest in confidentiality or that they are deceased. On the contrary, it is often difficult, if not impossible, to locate people after a 50 year hiatus, especially when those people may wish to forget or to avoid pursuit by those who would remind them of a difficult or unhappy past. Plaintiff's biological parents, who would be, respectively, 75 and 80 years old today, may yet be pursuing active family lives which would be irreparably harmed by the unexpected disclosure of their identities, a circumstance ignored by the dissent (dissenting opn, at 352-353).
We are not unmindful of the medical danger in which adopted children may be placed in the absence of their genetic histories. It is also evident, however, that as virtually any adopted person advances in age, his or her genetic history will be desirable for treatment of a variety of ailments including, for example, heart disease, diabetes and cancer. A rule which automatically gave full disclosure to any adopted person confronted with a medical problem with some genetic implications would swallow New York's strong policy against disclosure as soon as adopted people approached middle age. In such cases as this, the not unusual predicament of the adopted person which would support a preliminary finding of "good cause" for disclosure must be weighed against articulated potential interests in continued secrecy. The Legislature has addressed the issue of the competing interests of these children and the interests of other parties in anonymity by providing that agencies may release medical information with all identifying information redacted (Social Services Law § 373-a). Where, as here, later medical information concerning the biological parents may be required, correspondence through a guardian ad litem may often prove a solution (see, *350 Matter of Louis F., 42 N.Y.2d 260, 264, supra).
For the foregoing reasons, the order of the Appellate Division should be reversed, with costs, and plaintiff's motion denied.
BELLACOSA, J. (dissenting).
I dissent and vote to affirm the orders of the courts below compelling the appellant adoption agency, Louise Wise Services (LWS), to turn over the adoption records in its possession to the plaintiff.
Mr. Golan, born on November 4, 1930, was 54 years old when he initiated this action to discover medical information stemming from his biological family tree. In 1984 Golan, who was a licensed commercial pilot, developed certain medical abnormalities which prompted a denial of medical certification to exercise his pilot's privileges. The F.A.A. medical examiner stated in an affidavit that, absent medical information on Mr. Golan's biological family background, the examiner would not recertify him to exercise those privileges.
Thereafter, on September 9, 1984, Golan suffered a heart attack. His treating physician advised the court below that family history is significant in evaluating the risk factors of heart disease patients and, if Golan was ever going to be recertified as a pilot, some history on his natural parents would have to be obtained. The record also shows Golan's son, an instructor pilot for the United States Air Force, would benefit from medical data concerning his biological ancestors.
When this proceeding was initiated, Golan possessed a copy of his adoption decree, knew the full name of his natural mother, the name given him at birth, and additional data concerning his natural parents including their respective ages at the time of his birth; father 24 and mother 19. Some data had been provided to Mr. Golan by LWS. In fact, LWS represented that through Golan's own investigative efforts and its disclosure, he had all the information in the agency's possession, other than the name of his father, his father's college, names of his maternal grandparents, and the names of collateral relatives on his mother's side. Among the data disclosed by LWS was the key fact that respondent's maternal grandfather had died of heart disease in his late 50's.
Both of respondent's adoptive parents are deceased and his biological mother and father, if still alive, would be 75 and 80 years of age respectively. If the biological parents are still alive, LWS has indicated that a search of the city of respondent's birth, neighboring counties, areas in adjoining States, other major metropolitan areas and the father's college were *351 "totally unsuccessful" in leading to information about their whereabouts.
With the above facts before it, the Supreme Court ordered that Mr. Golan be permitted to examine and reproduce records relating to his adoption which are in the appellant agency's custody, since they would "permit a search for medical records that would be relevant and important to the physical well-being and possibly to the survival of the plaintiff." The Appellate Division affirmed, without opinion, and I would reach the same result as the two lower courts.
The two central issues are the necessity in this case for an evidentiary hearing on good cause and for notice to the biological parents.
Although I agree with the majority view that, after a preliminary showing of good cause, hearings may assist the fact finder in determining the effect on other interested parties of permitting access to confidential adoption records, I do not agree that such a hearing would be necessary in this case. Neither do I agree with the apparent restriction that adoption-records-access issues can only be resolved upon the articulation of each interest, together with the court's observation and examination of witnesses. Finally, I believe the majority view is wrong that notice must be given to all parties, in all cases, or guardians ad litem be appointed to represent their interests.
In Matter of Linda F. M. (52 N.Y.2d 236), we directed that the natural parents of an adopted party be given notice of efforts to seek confidential information in adoption files "if the court finds that the petitioner has made a showing of entitlement" (id., at 241). The threshold requirement of good cause, triggering this entitlement, must be satisfied pursuant to the requirements of Domestic Relations Law § 114. The notice was conditioned, however, by the proviso that the natural parents could be "located with reasonable effort" (id., at 241). There are no explicit authorities which I could find, nor are any pointed to by the majority, that erect a legal impediment to a court making a good cause finding without the knowledge of or notice to persons other than the adoptive parents. Notably, in the Matter of Linda F. M. (supra, at 241), where this court reasoned that the interests of the natural parents dictate that they be afforded the same notice which Domestic Relations Law § 114 provides for adoptive parents, provision was made for case-by-case exceptions. We noted that it is not always *352 practical to give notice, especially when, as was the situation there, the record reveals that it would be all but impossible to locate the natural parents.
I acknowledge and accept the reasons for confidentiality of adoption records noted in Matter of Linda F. M. (supra, at 239), reiterated in Matter of Walker (64 N.Y.2d 354, 361), and again reconfirmed by the majority in this case. They constitute substantial interests in favor of carefully protecting the confidentiality of adoption records, but they must be applied to individual facts of specific cases and not be given abstract obeisance. Domestic Relations Law § 114 itself contemplates that, within the framework of these important confidentiality concerns, access to records should be permitted upon good cause shown. To require notice to all parties or the appointment of a guardian ad litem, the articulation of all parties' interests and the observation and examination of witnesses, as in Matter of "Anonymous" (92 Misc 2d 224), is neither wise, nor necessary, nor fair. In Matter of "Anonymous" (supra), the adoptive parents defaulted in appearance and the natural parents consented to the disclosure sought by the petitioner adoptee. Despite the default, the concession to the desired disclosure and the court's preliminary finding of good cause, the court nevertheless appointed a guardian ad litem on behalf of the natural parents and required the taking of testimony to confirm the existence of good cause. Under such circumstances, both the appointment of the representative and the routine taking of testimony were pointless, as they would be in this case.
By no means do I suggest that the careful examination of all affected persons' interests and the court's observation and examination of witnesses should be dispensed with in every instance. In fact, I am satisfied with the majority view that a hearing is the preferred route, subject to dispensation where the good cause factors warrant entitlement to the records and on papers alone. In appropriate cases, Judges can direct that in addition to notice to the adoptive parents (Domestic Relations Law § 114) and notice to the natural parents or the appointment of a guardian (Matter of Linda F. M., 52 N.Y.2d 236, 241, supra), an in-person hearing should be held. This is not one of those cases.
Here, Mr. Golan has established good cause for the disclosure of the identity of his natural parents to the satisfaction of both courts below. Unlike the merely curious adoptee in *353 Matter of Linda F. M. (supra, at 240), Mr. Golan has established substantial and uncontroverted medical and professional reasons authorizing disclosure. Moreover, on the separate issue of notice, it is fair to conclude that both courts below were satisfied that notice to the natural and adoptive parents would be impractical if not impossible and that all reasonable efforts, indeed extraordinary and persistent efforts, to locate the natural parents had been pursued. In Matter of Linda F. M. (supra, at 240-241), this court fashioned a reasonable construction of the provisions of Domestic Relations Law § 114 by providing that the natural parents have a right to notice provided that they can be located with reasonable effort. That test has been satisfied in this case where the record reveals that LWS had, after substantial and extended effort, been unable to locate or contact the natural parents. In light of the efforts of LWS, the relatively advanced age of the natural parents, and the fact that the adoptive parents were deceased, there was good and sufficient reason for the courts below to proceed expeditiously and without additional, unnecessary procedural safeguards.
Despite what I would regard as the obvious result after applying the majority reasoning to the record, they would require notice and hearing which, in my respectfully proffered view, would be perfunctory proceduralisms. Indeed, I can think of few better cases for the application of the majority's exception to hearing than this one, if the exception is to have real meaning. As predicates for its conclusion to require the hearing here, the majority properly expresses a desire to encourage adoptions, to protect the adoption process and to preserve the legitimate confidentiality objectives of the participants and society in general. I share those salutary objectives. Disclosure in this case on the strong papers presented and based on the manifest good cause found by two lower courts, not mere curiosity as in Matter of Linda F. M. (supra), would not undermine any of those objectives. Indeed, in spite of the balance the majority tries to strike in its rationale, its application under these facts will unnecessarily and harshly foster governmental and bureaucratic red tape against the legitimate interests of individuals.
In sum, the public policy of New York is that the confidentiality of the participants in an adoption proceeding be reasonably protected. It is my view that the courts can be trusted to *354 act rationally and flexibly when disclosure is warranted without a hearing, as they have done here. I would affirm.
Order reversed, etc.
NOTES
[1] Plaintiff was already in possession of the Cook County, Illinois, adoption decree naming his biological mother and referring to his biological father by surname only.
[2] Domestic Relations Law § 114 provides that adoption records shall be "sealed and secret," and that no order for disclosure or access may be granted "except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct." By its terms, the statute applies only to the records of a New York adoption proceeding. In Matter of Walker, however, we held that section 114 expresses this State's public policy of confidentiality, and that this policy applies to records of foreign adoption proceedings as well, even when the foreign proceeding did not require confidentiality at the time of adoption (64 N.Y.2d 354 [majority opn, at 360-361, dissenting opn, at 362, n]).