[599 NYS2d 549]

CITY OF NEW YORK et al., Respondents, v 17 VISTA ASSOCIATES et al., Appellants.

First Department, June 17, 1993

### APPEARANCES OF COUNSEL

*Robert J. Ward* of counsel *(Jean-Marie L. Atamian* with him on the brief; *Shea & Gould,* attorneys), for appellants.

*A. Orlie Spanier* of counsel *(Stephen J. McGrath* and *John Low-Beer* with him on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for respondents.

### OPINION OF THE COURT

ROSENBERGER, J.

The actions of the City of New York in discarding established procedure in favor of a scheme in which money was extracted in exchange for an expedited and favorable review of the status of a building, despite an existing determination by the City granting the building such favorable status, violated public policy and renders the agreements between the parties void and unenforceable.

The Seamen's Church Institute of New York and New Jersey, a not-for-profit religious corporation, maintained headquarters at a State Street site at which it housed seamen who were in New York between voyages. The certificate of occupancy described the building as a Class B multiple dwelling. The occupancy level of the building decreased with the decline of merchant shipping. In the 1980's, the continuing decline in occupancy, as well as mounting operating costs threatened the Institute's survival. It therefore determined that it was necessary to sell the building. In July of 1984, the Institute entered into a contract to sell the property to the defendant 17 Vista Associates (Vista) for $29,000,000. Vista intended to demolish the existing building and erect a high-rise office tower. Closing was scheduled for March 4, 1985. The building was vacated in

December. The Institute moved to temporary quarters at 50 Broadway in February of 1985.

In late February of 1985, however, Vista informed the Institute that it would not close on the sale because its application for a demolition permit had been denied by the Department of Buildings. At issue was the possible application of Local Laws, 1983, No. 19 of the City of New York (now codified at Administrative Code of City of NY § 27-198 [a]), which provided that, before the Department of Buildings could issue a permit to alter or demolish a single-room occupancy multiple dwelling (SRO), the owner of the building had first to apply for and obtain a certificate that there had been no harassment of SRO residents, or an exemption from that requirement, from the Commissioner of the Department of Housing Preservation and Development (HPD). The law provided an exemption for "residences whose occupancy is restricted to an institutional use such as housing intended for use primarily or exclusively by the employees of a single company or institution." (Administrative Code § 27-198 [a] [4].) The Institute had applied for neither a Certificate of No Harassment nor an institutional use exemption since it believed that, as a tax-exempt charitable organization, it was not subject to the law governing SROs. Also during this time period, Local Laws, 1985, No. 59 of the City of New York, providing for a moratorium on demolishing, altering or converting any SRO in the City, was before the Mayor for signature.

The Institute and Vista agreed to adjourn the closing pending a determination by the City that the building was not subject to Local Law No. 19. Because its financial condition was continuing to deteriorate, the Institute's director wrote to the Assistant Commissioner of HPD, and Reverend James R. Whittemore of the Institute wrote to the Mayor, to urge that the building be granted an institutional use exemption as soon as possible.

According to Ralph Smith, a member of the Board of Managers of the Institute, a meeting was held on April 29, 1985 between representatives of the Institute and City officials. After the Institute presented its case for an exemption, the City, according to Smith, "made it clear" that the exemption would not be granted unless the Institute and Vista each made a substantial payment to the City to benefit the homeless. Resolution of the Institute's entitlement to the exemption would have taken considerable time, due to the need for an

independent investigation, and the Institute needed the proceeds of the sale immediately to remain in operation. The City, according to then-Commissioner of HPD Anthony Gliedman, therefore decided to grant the Institute the exemption, provided Vista paid $500,000 into a trust created to provide low- and middle-income housing without restriction to seamen. The Institute was also to contribute $1,000,000 from the proceeds of the sale to the trust, known as the 15 State Street Housing Trust of which two named plaintiffs, City officials, were to serve as trustees. The trust funds were also to be used to house seamen in accordance with the Institute's charter, which precluded it from spending its funds on housing for other than seafarers.

Mr. Gliedman stated in an affidavit that, pursuant to the agreement among the City, the Institute and Vista on July 24, 1985, the City resolved in favor of the Institute and Vista "the close question of whether the Institute's headquarters building * * * was or was not a single-room occupancy multiple dwelling ('SRO') for the purpose of Local Law 19 of 1983 and the then pending Local Law 59 of 1985". The City agreed to accept the Institute's factual representations regarding its entitlement to the institutional use exemption, without first conducting an independent investigation.

The Institute and Vista signed the agreement dated July 24, 1985, pursuant to which Vista purchased the property for $29,000,000. Vista also agreed to pay the $500,000 to the Trust upon satisfaction of the earliest occurrence of any one of four conditions: (a) the date a duly issued permit has been timely delivered to it permitting the lawful construction of the new building (b) the date Vista sells, exchanges or otherwise disposes of its interest in the property (c) the date of a sale of a majority interest in the owners of the site or (d) August 1, 1988, but only if Vista shall fail or refuse to promptly and diligently apply for all permits pertaining to the construction of the new building.

The Trust provided that it was created to "assist in the housing of seamen and others of low and moderate income." Under the Trust agreement, three trustees were to be appointed by the Institute and two by the City. However, it was further provided that if, on July 24, 1990, the principal of the Trust exceeded $600,000, the City would have the right to replace one of the Institute's trustees with one appointed by the City, thereby giving the City a majority of the trustees

and effective control over the Trust. As of March 21, 1990, the assets of the Trust amounted to $1,010,047.76.

On the same date the contract was signed, July 24, 1985, the City, by letter from the general counsel of HPD, issued its determination that the Institute's building was not an SRO. Also on that date, the Institute paid $1,000,000 to the Trust and Vista signed the promissory note for $500,000, which note was also turned over to the Trust. Some 15 months later, Vista was granted a permit to construct the new building. The building was finally completed at the end of 1988 and was sold by Vista in January of 1990.

The record reveals that an application for a demolition permit filed by Vista had already been approved by the Department of Buildings on July 12, 1985. Further, the permit application contained the notation "No SRO. No landmark. No Special Dist.", dated February 6, 1985 and the initials of an employee. Vista, however, had never been informed of the approval of this permit application.

After the Department of Buildings issued a permit to Vista on October 1, 1986, the trustees demanded payment on the $500,000 note. The defendants refused to pay and the plaintiffs instituted this action for breach of contract and failure to pay the promissory note. In their answer, the defendants contended, *inter alia,* that the City did not timely issue the necessary permit as required by the promissory note, and, therefore, payment under the note was not due and owing. They further maintained that, since Vista was required to execute the note because of the SRO laws which were later declared unconstitutional, the note was null and void. They also raised duress as an affirmative defense. In their counterclaim, the defendants sought damages in the amount of $70,000,000, allegedly caused by the City's dilatory actions in issuing the necessary permit. Due to the City's delay, the new building was not completed until late 1988, after the stock market decline of 1987, when the real estate market similarly declined.

The plaintiffs thereafter moved, *inter alia,* for summary judgment on the complaint and for summary judgment dismissing the defendants' affirmative defenses and counterclaim. The defendants cross-moved for summary judgment dismissing the complaint. The Supreme Court, *inter alia,* awarded the plaintiffs summary judgment on the complaint in the amount of $500,000, plus interest, against 17 Vista. The court dis-

missed the plaintiffs' claims against the other defendants since only 17 Vista was a party to the documents upon which the complaint was based. The plaintiffs' motion for leave to file a second amended complaint was also granted. The court denied the defendants' cross motion and dismissed their affirmative defenses and counterclaim.

The actions of the City in this matter violated public policy, thereby rendering the agreements void and unenforceable. The asserted goal, providing housing for low- and moderate-income people, while laudable, could not be properly achieved by extortion, with the City playing the role of adversary rather than administrative authority. Pursuant to the plan, those developers who could afford to would pay a price, in funds earmarked for HPD, for the privilege of having their permit applications processed before less compliant applicants, and further, for receiving an assurance that those applications would be approved.

It is not for any governmental agency, like Chaucer's Pardoner, to sell indulgences. The City had a duty to render its determination as to the building's status expeditiously and based solely on a review of the relevant criteria. By accepting money to accelerate its review process and promising a favorable determination, the City abused its governmental power and betrayed the public trust. Citizens have the right to expect that all applicants will be treated equally and fairly and that the safeguards imposed by regulations, presumably enacted for the public good, will be followed. The City's action in extracting payments from Vista and the Institute in exchange for a favorable determination of the building's status, after the Department of Buildings had already determined that the building was not an SRO and had approved the permit application, was fraudulent.

Local Laws, 1987, No. 9 of the City of New York, SRO legislation enacted in 1987, contained a buy-out exemption which, in essence, codified the "agreement" devised by the City in the instant matter. Pursuant to Local Law No. 9, an owner could purchase an exemption from the moratorium imposed on the conversion, alteration and demolition of SRO buildings (see, Local Laws, 1985, No. 59 of City of NY; Local Laws, 1986, No. 22 of City of NY) by payment of $45,000 per unit or the cost of a replacement unit, or by providing an equal number of replacement units. In declaring Local Law No. 9 null and void as a physical and regulatory taking, the Court of Appeals, in *Seawall Assocs. v City of New York* (74

NY2d 92, *cert denied* 493 US 976), determined that the statute's buy-out exemption did not render the law constitutionally acceptable. Instead, the Court found that the law permitted owners to avoid the illegal confiscation by paying a " 'ransom' " and that the extraction of money or replacement units was an " ' "out-and-out plan of extortion" ' " *(supra,* at 113, 114, quoting *Nollan v California Coastal Commn.,* 483 US 825, 837, quoting *J.E.D. Assocs. v Atkinson,* 121 NH 581, 584, 432 A2d 12, 14).

As part of the July 24, 1985 agreement, the Institute and Vista bargained for the City's determination that the building was exempt from the SRO laws and thus, entitled to a permit. However, these agreements were unnecessary, as was the payment of $1,500,000, in light of the previous determination in February of 1985, that the building was not an SRO, and the approval of Vista's permit application on July 12, 1985. The City characterizes the "No SRO" notation on the permit application a "mistake", and further seeks to avoid its impact by pointing out that HPD rather than the Department of Buildings was responsible for determining a building's SRO status, and whether any exemption applied. However, no affidavit from the employee who made the notation was submitted. Moreover, the City is bound by its agency's determination.

In sum, the agreement and note are void as violating public policy. Contracts contrary to public policy are unenforceable and courts will not recognize rights purportedly arising from them *(Szerdahelyi v Harris,* 67 NY2d 42). In light of the foregoing, we do not reach the defendants' remaining contentions.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Martin Schoenfeld, J.), entered June 2, 1992, which granted the plaintiffs' motion for leave to file a second amended complaint, for summary judgment dismissing the defendants' counterclaim and affirmative defenses and for summary judgment on the complaint, awarding them $500,000 plus interest against the defendant 17 Vista Associates, and which denied the defendants' cross motion for summary judgment dismissing the complaint and for leave to file an amended counterclaim, should be modified, on the law, the facts and in the exercise of discretion, to deny the plaintiffs' motion for summary judgment, to grant the defendants' cross motion for summary judgment dismissing the complaint and for leave to file an amended counterclaim,

the complaint should be dismissed, and the order and judgment should be otherwise affirmed, without costs.

CARRO, J. P., ELLERIN, KUPFERMAN and KASSAL, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered June 2, 1992, modified, on the law, the facts and in the exercise of discretion, to deny the plaintiffs' motion for summary judgment, to grant the defendants' cross motion for summary judgment dismissing the complaint and for leave to file an amended counterclaim, the complaint is dismissed, and the order and judgment is otherwise affirmed, without costs.