T & N PLC, Plaintiff–Appellant,

v.

FRED S. JAMES & CO. OF NEW YORK, INC., Defendant–Appellee.

No. 1317, Docket 93–9142.

United States Court of Appeals, Second Circuit.

Argued March 23, 1994.

Decided July 6, 1994.

Charles E. Dorkey III, New York City (Thomas I. Sheridan, III, Karen B. Burrows, James P. Lynn, Haythe and Curley, of counsel), for plaintiff-appellant.

Joan M. Gilbride, New York City (Philip J. Walsh, Thomas R. Manisero, Douglas W. Hammond, Wilson, Elser, Moskowitz, Edelman & Dicker, of counsel), for defendant-appellee.

Before OAKES, MESKILL, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant T & N plc ("T & N") appeals from a judgment entered in the United States District Court for the Southern District of New York (Haight, J.), dismissing its claims by summary judgment as barred by New York's six-year statute of limitations. T & N, a British manufacturer of products containing asbestos, commenced this action against Fred S. James & Co. of New York, Inc. ("James"), an insurance broker, alleging professional malpractice, breach of fiduciary

duty, breach of contract, and negligent misrepresentation arising from James's alleged failure to procure adequate insurance coverage.

On appeal, T & N contends that its action is not time-barred because the district court erroneously determined when its causes of action accrued. Alternatively, T & N argues that the district court erred by failing to enforce a "standstill agreement" between T & N and James that would have tolled the statute of limitations with respect to T & N's claims based on certain of the policies procured by James. For the reasons stated below, we find that T & N's action is barred by the statute of limitations, and accordingly we affirm the judgment of the district court.

## BACKGROUND

In 1979, T & N engaged James to procure product liability insurance for bodily injury and property damage claims arising from the sales of products in the United States by T & N and its United States subsidiaries. James procured ten policies from various insurers (the "Insurers") which purported to provide T & N with the coverage it sought. The policies were effective on various dates: one on January 31, 1980, two on May 21, 1980, three on December 31, 1980, and four on December 31, 1981.

T & N claims that during the application process, it provided James with all the information necessary to procure the policies, including information relating to pending asbestos-related claims against T & N. According to T & N, James failed to disclose this information to the Insurers. James, on the other hand, alleges that neither T & N nor its counsel provided James with any substantial information regarding the pending asbestos-related claims.

Since 1977, T & N has been sued in the United States by thousands of plaintiffs, including individuals, school boards, colleges, governments, and private property owners seeking recovery for alleged personal injury and property damage arising from exposure to asbestos. T & N argues that many of these claims should have been covered by the policies that James procured.

In March 1986, T & N sued the Insurers for indemnification and defense costs related to its property damage claims. The Insurers defended on several grounds, including that T & N and its agents failed to disclose certain underwriting risks. Specifically, the Insurers claimed that they were not informed of the pending asbestos-related claims against T & N.

In June 1987, shortly after learning of this defense, T & N entered into a standstill agreement with James to toll the statute of limitations in any future action against James. Although T & N believed that it had potential claims against James, it allegedly sought to avoid unnecessary litigation in the event that it received satisfactory payment from the Insurers. As such, T & N did not commence an action against James at that time. T & N ultimately settled with the Insurers for an amount substantially less than the aggregate limits of liability under the policies.

In November 1989, T & N initiated this action against James, asserting four causes of action: professional negligence, breach of fiduciary duty, breach of contract, and negligent misrepresentation. The basis of the action was that by failing to disclose essential information to the Insurers, James allowed the Insurers to assert a potentially valid defense to T & N's claim for coverage. T & N sought to recover the difference between the settlement amount obtained from the Insurers and the value that the policies would have had but for James's alleged misconduct.

James moved for summary judgment on the grounds that T & N's claims were barred by New York's six-year contract statute of limitations. On January 13, 1993, the district court granted James's motion and dismissed T & N's action. *T & N plc v. Fred S. James & Co. of New York, Inc.*, 89 Civ. 7688, 1993 WL 17336, 1993 U.S.Dist. LEXIS 530 (S.D.N.Y. Jan. 13, 1993). The district court determined that the causes of action accrued at the time James allegedly breached the brokerage contract, which occurred, if at all, no later than the issuance of the policies in 1980 and 1981. Because T & N did not commence this lawsuit until 1989, its action was time-barred. The district court also

held that the standstill agreement was invalid and unenforceable under New York law because it purported to extend the limitations period indefinitely. On September 29, 1993, the district court denied T & N's motion for reconsideration of its determination that the standstill agreement was void. *T & N plc v. Fred S. James & Co. of New York, Inc.*, 89 Civ. 7688, 1993 WL 404100, 1993 U.S.Dist. LEXIS 13936 (S.D.N.Y. Sept. 29, 1993). T & N now appeals.

## DISCUSSION

We review the grant of summary judgment by the district court *de novo*. *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994). On appeal, T & N argues that the district court erred in determining the time at which its causes of action accrued for purposes of the statute of limitations. Additionally, T & N argues that the district court erroneously determined that the standstill agreement purporting to toll the statute of limitations was unenforceable. We agree with the district court's resolution of both issues.

1. *Statute of Limitations*

a. *Accrual of Claims*

■ In holding that T & N's claims were barred by the statute of limitations, the district court determined that T & N's causes of action accrued at the time James allegedly breached the brokerage contract in 1980 and 1981. Consequently, because New York's six-year statute of limitations applies, *see Video Corp. of America v. Frederick Flatto Assocs., Inc.*, 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 439, 448 N.E.2d 1350, 1350 (1983), T & N's claims were time-barred when it brought this action in 1989. T & N, however, argues on appeal that its causes of action accrued in 1987 when it was first injured by the Insurers' disclaimer of liability. As discussed below, T & N misconstrues the governing case law.

Under New York law, a cause of action for breach of contract accrues and the statute of limitations commences when the contract is breached. *See Ely–Cruikshank Co: v. Bank of Montreal*, 81 N.Y.2d 399, 599 N.Y.S.2d 501, 502, 615 N.E.2d 985, 986 (1993). Although conceding that contract-based claims typically accrue at breach, T & N contends that this is one of those "rare case[s] where the breach and the harm engendered by the breach are not simultaneous events, [so that] the cause of action for breach of contract accrues and the period of limitations runs only from the occurrence of the harm." *Brooklyn Union Gas Co. v. Interboro Surface Co.*, 87 A.D.2d 833, 449 N.Y.S.2d 274, 275 (2d Dept.1982) (citing *Ryan Ready Mixed Concrete Corp. v. Coons*, 25 A.D.2d 530, 267 N.Y.S.2d 627 (2d Dept.1966)). In both *Brooklyn Union Gas* and *Ryan Ready Mixed Concrete*, the Second Department held that the statute of limitations did not run from breach, but from the time at which plaintiff first suffered injury. In the case at bar, however, the district court declined to rely on *Brooklyn Union Gas* and *Ryan Ready Mixed Concrete*, characterizing them as "anomalies" rather than as a sign that New York courts had adopted an accrual-at-injury rule where breach and damage are not simultaneous.

Our reading of the relevant decisions indicates that the Court of Appeals has rejected the decisions upon which T & N relies and has declined to adopt an accrual-at-injury rule, even where breach and damages are not simultaneous. In *National Life Ins. Co. v. Frank B. Hall & Co.*, 67 N.Y.2d 1021, 503 N.Y.S.2d 318, 319, 494 N.E.2d 449, 450 (1986), the New York Court of Appeals held that in a suit against an insurance broker for malpractice in the performance of a contract, the statute of limitations commenced upon defendant's failure to timely notify the insurers, rather than when the insurers initially disclaimed liability for late notification. Although the majority in *National Life* did not explicitly discuss either *Brooklyn Union Gas* or *Ryan Ready Mixed Concrete*, the dissent argued that those cases should govern. *See id.* 503 N.Y.S.2d at 320, 494 N.E.2d at 450–51. Notably, an examination of the briefs submitted in *National Life* reveals that the appellant urged the Court of Appeals to apply *Brooklyn Union Gas* and *Ryan Ready Mixed Concrete*.

More recently, in *Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 599

N.Y.S.2d 501, 502, 615 N.E.2d 985, 986 (1993), the Court of Appeals again refused to apply the accrual-at-injury rule of *Brooklyn Union Gas* and *Ryan Ready Mixed Concrete.* Although *Ely–Cruikshank* involved an action by a real estate broker against a vendor, we believe that the principles enunciated are equally applicable in this context. In *Ely–Cruikshank,* the Court of Appeals held that in contract actions, the cause of action accrues and the statute of limitations commences at breach even though no damage occurs until later and the "injured party may be ignorant of the existence of the wrong or injury." 599 N.Y.S.2d at 502–03, 615 N.E.2d at 986–87 (citation omitted). Moreover, the dissent criticized the majority for "rejecting the reasoning of ... *Brooklyn Union Gas* ... and *Ryan Ready Mixed Concrete* " and adopting "a simplistic rule which starts the Statute of Limitations running in a breach of contract action from the date of ... breach ... although, at the time of [breach], no damage of any kind could have been alleged." *Id.* at 507, 615 N.E.2d at 991. *See also Central Gen. Hosp. v. Bramex Ltd.,* 174 A.D.2d 556, 570 N.Y.S.2d 670 (2d Dept.1991); *Kracke v. Western World Ins. Co.,* 121 A.D.2d 692, 503 N.Y.S.2d 1012 (2d Dept. 1986).

Nevertheless, T & N contends that *National Life* and *Ely–Cruikshank* are distinguishable from the instant case. T & N claims that because it was not injured until 1987, it could not assert an action against James prior to that time, unlike the plaintiffs in *National Life* and *Ely–Cruikshank* who were aware of their injuries within the limitations period. We find this to be a distinction without a difference, in light of the clear holdings of the Court of Appeals.

First, it is not determinative that T & N was unaware of James's alleged breach: " '[k]nowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in [a] contract [action].' " *Ely–Cruikshank,* 599 N.Y.S.2d at 503, 615 N.E.2d at 987 (quotation omitted). Second, T & N could have maintained an action against James prior to 1987 because nominal damages are always available for breach of contract. All of the neces-

sary elements for relief were therefore present at the time of breach in 1980 and 1981. *See id.; Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 934, 612 N.E.2d 289, 292 (1993). As such, it is unimportant that both *National Life,* 503 N.Y.S.2d at 319, 494 N.E.2d at 450, and *Ely–Cruikshank,* 599 N.Y.S.2d at 504, 615 N.E.2d at 988, noted in dicta that the plaintiffs knew or should have known of the facts required to institute an action within the limitations period: the Court of Appeals has made clear that neither knowledge of the breach nor cognizable damages are required to start the statute of limitations running at breach. We therefore conclude that the Court of Appeals has implicitly overruled *Brooklyn Union Gas* and *Ryan Ready Mixed Concrete* by declining to apply the accrual-at-injury rule in situations where it would have been applicable. In sum, we agree with the district court that T & N's claims accrued when James allegedly breached its contract.

### b. *Continuous Treatment Doctrine*

T & N also claims that the district court erred by not applying the continuous treatment doctrine. This doctrine provides that when a professional's wrongful conduct was part of a continuous course of treatment, accrual of a malpractice action is suspended until the professional relationship is terminated. Although it typically applies to professionals such as doctors, lawyers, and accountants, one court has applied the doctrine to insurance brokers. *See Ben Heller, Inc. v. St. Paul Fire & Marine Ins. Co.,* 107 Misc.2d 687, 435 N.Y.S.2d 669 (Sup.Ct.1981) (applying doctrine where, following broker's failure to timely notify insurance carriers, broker continued to represent insured to settle the claim).

Assuming that the doctrine is applicable to insurance brokers, we would decline to apply it in this case. The essence of T & N's claims is that James breached its duty to obtain adequate insurance coverage. The record does not suggest that James was under a continuing duty to assure that T & N's coverage was satisfactory. Nor does T & N allege that James was obliged to perform other ongoing services that would be suffi-

cient to invoke application of the doctrine. Simply stated, because this case does not involve the provision of ongoing services related to the particular duty breached, the continuous treatment doctrine is inapplicable. *See, e.g., National Life,* 503 N.Y.S.2d at 319, 494 N.E.2d at 450 (declining to apply continuous treatment doctrine to insurance broker "inasmuch as this case does not involve an uninterrupted course of reliance and services related to the particular duty breached"). Accordingly, we find that the district court correctly held that T & N's claims against James accrued at the time of breach.

### 2. *Standstill Agreement*

■ Although we agree with the district court that T & N's claims accrued in 1980 and 1981, we must still consider whether the standstill agreement executed by the parties in June 1987 purporting to toll the statute of limitations is enforceable. T & N claims that this agreement preserved all causes of actions on the four policies effective on December 31, 1981, which were still ripe when the standstill agreement was executed. The district court, however, held that the standstill agreement was invalid and unenforceable under New York law because it purported to extend the statute of limitations indefinitely. We agree.

New York law allows parties to a contract to extend the applicable statute of limitations once a cause of action has accrued. *See* Gen.Oblig.L. § 17–103(1). Section 17–103(1) provides that a promise to waive, extend, or not to plead the statute of limitations made after the accrual of the cause of action in a contract action

> is effective, according to its terms, to prevent interposition of the defense … in an action or proceeding commenced within the time that would be applicable if the cause of action had arisen at the date of the promise, or within such shorter time as may be provided in the promise.

In the case at hand, the agreement between T & N and James provided that in consideration of T & N's forbearance from suing James, James agreed to toll the applicable statute of limitations "from the date of this letter until 30 days after receipt of notice of termination of this agreement by either party." Moreover, the stated purpose of the agreement was "to toll the applicable time period and not to start it running anew."

T & N argues that § 17–103(1) does not require a standstill agreement to designate a finite time period for which the statute of limitations will be tolled. Rather, T & N contends, a standstill agreement automatically renews the statute of limitations from the date of the agreement for the period of time that otherwise would have been applicable—in this case, six years—unless the parties specify a shorter period. *See John J. Kassner & Co. v. City of New York,* 46 N.Y.2d 544, 415 N.Y.S.2d 785, 790, 389 N.E.2d 99, 103 (1979). We believe, however, that *Bayridge Air Rights, Inc. v. Blitman Constr. Corp.,* 80 N.Y.2d 777, 587 N.Y.S.2d 269, 599 N.E.2d 673 (1992) forecloses T & N's argument.

In *Bayridge,* the parties purported to extend the six-year statute of limitations to commence upon the final payment from an escrow account at some indeterminate point in the future. *See id.* 587 N.Y.S.2d at 270, 599 N.E.2d at 674. Plaintiff did not attempt to enforce the agreement by its terms, but instead argued that § 17–103 extended the limitations period six years from the date of the agreement. The Court of Appeals interpreted the agreement "according to its terms" as extending the limitations period to an indefinite future date, declined to reform the agreement, and held that it was void and unenforceable. *See id.* at 270–71, 599 N.E.2d at 674–75. In refusing to infer a six-year limitations period, the Court of Appeals stated that reading implicit time limitations into agreements

> would require courts to ignore the legislative direction that a promise to extend the Statute of Limitations be enforced "according to its terms," and either to speculate on the parties' intent as to the length of the extension they would have desired or to impose a blanket six-year extension irrespective of their intent.

*Id.* at 270, 599 N.E.2d at 674.

T & N attempts to distinguish *Bayridge* on the grounds that the parties there tampered

with the accrual date rather than with the statute of limitations. We find, however, that the broad pronouncement above in *Bayridge* makes clear that New York courts will not infer a six-year limitations period into a standstill agreement that by its terms extends the statute of limitations indefinitely. The agreement between T & N and James purports to toll the limitations period indefinitely and states that the parties did not intend the limitations period to run anew. We therefore agree with the district court that the agreement was invalid and unenforceable.

■ Finally, T & N claims that James should be equitably estopped from asserting the statute of limitations as a defense. *See* Gen.Oblig.L. § 17–103(4)(b). James contends that this Court should not consider this argument because of T & N's failure to raise it below. In any event, we would decline to equitably estop James from asserting the statute of limitations as a defense because T & N has not alleged any facts suggesting that James wrongfully induced T & N to refrain from commencing its action. *See Park Assocs. v. Crescent Park Assocs., Inc.,* 159 A.D.2d 460, 552 N.Y.S.2d 314, 315 (2d Dept.1990) (party seeking estoppel must establish that it was "induced ... by fraud, misrepresentation or deception to refrain from commencing the action in timely fashion"). Accordingly, we decline to estop James from asserting the statute of limitations as a defense.

## CONCLUSION

For the above reasons, we affirm the judgment of the district court.