Deborah O'HEARN, Plaintiff,

v.

SPENCE–CHAPIN SERVICES TO FAMILIES AND CHILDREN, INC., Defendant.

No. 95 Civ. 3775(JGK).

United States District Court, S.D. New York.

June 4, 1996.

---

Robert Fierman, Andrew Miltenberg, Neseuoff & Miltenberg, New York City, for Plaintiff.

Lisa E. Cleary, Stephanie Fell, Patterson, Belknap, Webb & Tyler, L.L.P., New York City, for Defendant.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff Deborah O'Hearn is an adopted child. She alleges that she contacted the defendant Spence–Chapin Services to Families and Children, Inc. ("Spence–Chapin"), an adoption agency, in 1988 when she was 20 years old to attempt to learn the identity of her natural mother. Spence–Chapin provided only non-identifying information. In 1992, the plaintiff hired a private investigation agency which was able to locate her mother, Ann Larkin Esposito. Before the plaintiff could meet Esposito, however, Esposito died.

The plaintiff alleges that in 1968 Spence–Chapin orally promised Esposito that if Esposito requested the agency to give her name and address to the plaintiff, and if the plaintiff asked for this information after she turned 18, the agency would provide this information to the plaintiff. According to the complaint, in 1977 Esposito asked the agency to give identifying information to the plaintiff if the plaintiff asked for it. The agency allegedly responded by letter that it would do so.

Relying on diversity of citizenship jurisdiction, the plaintiff brings claims against Spence–Chapin for breach of contract based on the two alleged contracts between Spence–Chapin and her natural mother concerning the release of identifying information to the plaintiff. The plaintiff contends that she is a third-party beneficiary of these contracts. She also brings tort claims for negligent and intentional failure to give informa-

tion, negligent misrepresentation, intentional or negative infliction of emotional distress, and negligence per se. She also seeks punitive damages.

The defendant moves to dismiss the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, the defendant argues that (1) one of the contract claims is void under the statute of frauds, and both contract claims are untimely and contrary to the public policy of New York; (2) the tort claims are untimely and fail to state a claim upon which relief can be granted; (3) the punitive damages claim is improperly pleaded as an independent cause of action.

## I.

The plaintiff's first two causes of action are for breach of contract. The defendant argues that these contract claims are untimely, that the 1968 oral agreement is barred by the statute of frauds, and that both the 1968 and 1977 agreements are barred by the public policy of the State of New York.

### A.

■ The plaintiff did not respond in her papers to the defendant's argument that the claim for the alleged breach of the 1968 contract is barred by the statute of frauds. The defense is therefore conceded and the contract claim based on the 1968 contract (First Claim for Relief) must therefore be dismissed. In any event, as a matter of law, the claim is barred by the statute of frauds because the contract could not be performed within one year. *See* N.Y.Gen.Obl.L. § 5–701(a)(1).

### B.

■ The defendant also argues that both of the plaintiff's contract claims are untimely. The contract claims accrued in 1988 when the contracts were allegedly breached. *See Ely–Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 502, 615 N.E.2d 985, 986 (1993) (under New York law, a breach of contract cause of action accrues at the time of the breach even if the damage does not occur until later); *see also T & N PLC v. Fred S. James & Co. of New York,*

*Inc.,* 29 F.3d 57, 59–60 (2d Cir.1994) (discussing accrual of contract claims under New York law). As the Court of Appeals of New York has explained:

> "[e]xcept in cases of fraud where the statute expressly provides otherwise, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury.... Thus, knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in a contract action."

*Ely–Cruikshank Co.,* 81 N.Y.2d at 403, 599 N.Y.S.2d 501, 615 N.E.2d 985 (internal quotations and citations omitted).

Here, the defendant contends that the plaintiff's contract claims are actually claims for personal injury, and thus are subject to the three-year statute of limitations for negligence actions rather than the six-year statute of limitations for contract actions. It is not necessary to determine whether a three- or six-year statute of limitations applies in this case because the plaintiff's contract claims would be barred under the six-year statute of limitations in any event. The plaintiff's contract claims accrued in August 1988, when she contacted the defendant to request information about her mother and was allegedly told, in breach of the two alleged contracts, that she could be given only non-identifying information. The plaintiff did not initiate this action, however, until May 1995, almost seven years after the defendants allegedly breached the contracts at issue in this case.

The plaintiff does not argue that the contract claims were brought within the statute of limitations. Rather, the plaintiff contends that the defendant is equitably estopped by its own misconduct from asserting a statute of limitations defense.

■ The doctrine of equitable estoppel is available when the defendant's fraud, misrepresentation, or deception induced the plaintiff to refrain from commencing the action within the applicable statute of limitations. *See East Midtown Plaza Housing Co., Inc. v. City of New York,* 218 A.D.2d

628, ——, 631 N.Y.S.2d 38, 38 (1st Dep't 1995); *see also T & N,* 29 F.3d at 62 (plaintiff must allege facts indicating that defendant wrongfully induced plaintiff to refrain from commencing its suit). When the defendant allegedly concealed a material fact without making any actual misrepresentations, the plaintiff must demonstrate that a fiduciary relationship imposed on the defendant an obligation to inform the plaintiff of the facts underlying the claim. *Gleason v. Spota,* 194 A.D.2d 764, 764, 599 N.Y.S.2d 297, 299 (2d Dep't 1993); *Jordan v. Ford Motor Co.,* 73 A.D.2d 422, 424, 426 N.Y.S.2d 359, 360–61 (4th Dep't 1980); *see also East Midtown Plaza Housing Co.,* 631 N.Y.S.2d at 39 (citing *Cabrini Med. Ctr. v. Desina,* 64 N.Y.2d 1059, 1062, 489 N.Y.S.2d 872, 874–75, 479 N.E.2d 217, 219–20 (1985)); *Department of Econ. Development v. Arthur Andersen & Co. (U.S.A.),* 747 F.Supp. 922, 943 (S.D.N.Y. 1990).

■ The plaintiff points to no affirmative misrepresentations that induced her to refrain from bringing this action or from pursuing the unsealing of her adoption record under N.Y.Dom.Rel.L. § 114. Instead, the plaintiff argues that Spence–Chapin induced her to refrain from commencing this action because it concealed from her the fact that she had a claim against them. More specifically, the plaintiff contends that the defendant failed to tell her in 1988 when she asked for information about her natural mother that the defendant had two alleged contracts with the plaintiff's natural mother regarding the release of identifying information, that the agency believed that it could not give the plaintiff the information she requested because under New York law she needed a court order to obtain such information, and that the plaintiff's natural mother had given the defendant the identifying information that the plaintiff was seeking and that the plaintiff's natural mother therefore affirmatively wanted contact with the plaintiff if the plaintiff so desired.

Because the plaintiff alleges that the defendants concealed information, she must demonstrate that the defendant had a fiduciary duty to reveal this information. The plaintiff has presented no authority, however, from New York or indeed any other state for the proposition that a fiduciary relationship exists between an adoption agency and an adoptee. Indeed, in her Complaint, the plaintiff alleged only that Spence–Chapin had a "unique, special duty akin to a fiduciary duty ..." (Compl. ¶ 46.) And at oral argument, the plaintiff's counsel indicated that he was not sure if the duty Spence–Chapin allegedly owed to the plaintiff was a fiduciary duty. Spence–Chapin argued persuasively that there is no authority supporting the existence of a fiduciary relationship between an adoption agency and an adoptee, particularly long after the adoption is completed and the adoption agency no longer has any relationship with the adopted child. Spence–Chapin's position is supported by the statutory adoption scheme in New York. While New York State law regulates the process of adoption and the confidentiality of adoption records, *see generally* N.Y.Dom.Rel.L. § 114, there is no provision of that law or New York State case law that establishes a fiduciary relationship between an adoption agency and an adoptee.

Only recently have courts held that adoption agencies may be held liable to adoptive parents for intentionally misrepresenting or fraudulently concealing the medical and psychiatric background of the children they place for adoption. *See Juman v. Louise Wise Servs.,* 211 A.D.2d 446, 447, 620 N.Y.S.2d 371, 372 (1st Dep't 1995); *Michael J. v. County of Los Angeles, Dep't of Adoptions,* 201 Cal.App.3d 859, 872–74, 247 Cal. Rptr. 504, 511–13 (Ct.App.2d Dist.1988) (holding that a cause of action exists against an adoption agency for the intentional misrepresentation or fraudulent concealment of an adopted child's mental or physical characteristics); *Meracle v. Children's Serv. Society of Wisconsin,* 149 Wis.2d 19, 32, 437 N.W.2d 532, 537 (1989) (adoption agency could be held liable for affirmatively misrepresenting health information about a child placed for adoption); *see also M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 287–88 (Minn.1992) (recognizing cause of action for negligent misrepresentation brought by adoptive parents against adoption agency in connection with the medical background of children placed for adoption); *Roe v. Catho-*

*lic Charities of the Diocese of Springfield, Ill.,* 225 Ill.App.3d 519, 531–38, 167 Ill.Dec. 713, 720–25, 588 N.E.2d 354, 361–66 (5th Dist.), *appeal denied,* 146 Ill.2d 651, 176 Ill. Dec. 821, 602 N.E.2d 475 (1992) (recognizing cause of action for negligence brought by adoptive parents against adoption agency for failure to disclose medical and psychological problems in response to a specific request). In these few cases where agencies are found to have a duty to the adoptive parents, the agencies' duties have developed because of adoptive parents' "compelling need" to learn the medical and psychiatric background of the children they adopt, "not only to secure timely and appropriate medical care for the child, but also to make vital personal, health and family decisions." *M.H.,* 488 N.W.2d at 287; *see also Roe,* 225 Ill.App.3d at 537, 167 Ill.Dec. 713, 588 N.E.2d 354. There are no similar policy concerns requiring the development of a fiduciary relationship between an adoption agency and an adult adoptee or requiring the recognition of a duty between the adoption agency and an adult adoptee. There is no basis for imposing on an agency a duty to inform an adult adoptee about her legal rights or provide her with information that would enable her to initiate a lawsuit against it. Indeed, recognizing such an obligation would be contrary to the New York statutory scheme discussed below. If that statutory scheme is to be altered, it must plainly be done by the New York State legislature, not by the courts.

Because the plaintiff has failed to demonstrate that the circumstances of this case warrant the recognition of a fiduciary relationship between an adoption agency and an adoptee such that the agency had a duty to disclose any information to her, the doctrine of equitable estoppel does not apply, and the plaintiff's contract claims must be dismissed as untimely.

### C.

The defendant also argues that the contract claims are barred because the alleged contracts are contrary to the public policy of the State of New York. A contract may be declared void because it is contrary to public policy " 'found in the Constitution, the stat-utes or judicial records.' " *In the Matter of Estate of Walker,* 64 N.Y.2d 354, 359, 486 N.Y.S.2d 899, 902, 476 N.E.2d 298, 301 (1985) (quoting *People v. Hawkins,* 157 N.Y. 1, 12, 51 N.E. 257 (1898)); *see also City of New York v. 17 Vista Assocs.,* 192 A.D.2d 192, 198, 599 N.Y.S.2d 549, 553 (1st Dep't 1993) ("Contracts contrary to public policy are unenforceable and courts will not recognize rights purportedly arising from them.").

In her first breach of contract claim, the plaintiff alleges that in 1968 Spence–Chapin entered into an oral agreement with her natural mother whereby Spence–Chapin stated that it would disclose the identity of her natural mother when the plaintiff "reached a certain age" and "when [plaintiff] wanted to learn the identity" of her natural mother. (Compl. ¶ 10.) The plaintiff claims that Spence–Chapin agreed to provide this information "if (*and only if*)" her natural mother informed the agency that she wished her identity to be revealed to the plaintiff. (*Id.*) The terms of the 1977 contract were similar. The plaintiff claims that in 1977 Ann Larkin Esposito, her natural mother, contacted Spence–Chapin to inquire about the location, health, and well-being of her daughter, and to request that her daughter be informed of her identity and location. (Compl. ¶ 14.) The plaintiff alleges that Spence–Chapin responded to Esposito's inquiry by letter dated May 23, 1977, stating that because Esposito had requested that her identity be made known to the plaintiff, Spence–Chapin would provide the plaintiff with identifying information if the plaintiff requested such information after she turned 18. (Compl. ¶ 15.)

The defendant claims that both of these contracts are contrary to the New York public policy of keeping adoption records confidential without a determination by an appropriate state court that good cause has been shown for disclosure. To support its argument, the defendant points to Domestic Relations Law § 114, which requires that adoption records must be kept sealed, and that an individual seeking to obtain information contained in these records must petition an appropriate state court and demonstrate good cause in order to obtain access to them.

Domestic Relations Law § 114 provides in relevant part:

No person shall be allowed access to such sealed [adoption] records and order any index thereof except upon an order of a judge or surrogate of the court in which the order was made or of a justice of the supreme court. No order for disclosure or access and inspection shall be granted except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct.

Dom.Rel.Law § 114(2).

Domestic Relations Law § 114 serves to protect the interests of the natural parents, the adoptive parents, the adopted child, and society. It reflects a strong public policy, repeatedly affirmed by the New York State courts and the Court of Appeals for the Second Circuit, to protect the confidentiality of adoption information. This provision "shields the adopted child from possibly disturbing facts surrounding his or her birth and parentage, it permits the adoptive parents to develop a close relationship with the child free from interference or distraction, and it provides the natural parents with an anonymity that they may consider vital.... The State's interest in fostering an orderly and supervised system of adoptions is closely tied to these interests of the parties involved." *In the Matter of Linda F.M.*, 52 N.Y.2d 236, 239, 437 N.Y.S.2d 283, 284, 418 N.E.2d 1302, 1303 (1981) (internal citations omitted); *see also In the Matter of the Estate of Best*, 66 N.Y.2d 151, 155, 495 N.Y.S.2d 345, 347–48, 485 N.E.2d 1010, 1012 (1985) (the secrecy of section 114 is "vital and beneficial to the entire adoption process"); *Estate of Walker*, 64 N.Y.2d at 360, 486 N.Y.S.2d 899, 476 N.E.2d 298 (discussing the importance of the public policy behind the sealing of adoption records); *Application of Anonymous*, 89 Misc.2d 132, 133–34, 390 N.Y.S.2d 779, 781 (N.Y.Co.Sur.1976) (discussing the ways in which the confidentiality and sealing of records as provided in section 114 promote legislative purposes in several ways); *see also Alma Society Inc. v. Mellon*, 601 F.2d 1225, 1231–33, 1235–36 (2d Cir.1979) (noting that "the confidentiality statutes promote the social policy underlying adoption laws,") and

that New York public policy is " 'contrary to the disclosure of the names and identities of the natural parents and prospective adoptive parents to each other.' " (quoting *Scarpetta v. Spence–Chapin Adoption Serv.*, 28 N.Y.2d 185, 195, 321 N.Y.S.2d 65, 73, 269 N.E.2d 787, 793, *cert. denied* 404 U.S. 805, 92 S.Ct. 54, 30 L.Ed.2d 38 (1971)).

A crucial aspect of the scheme of Domestic Relations Law § 114 is to leave the balancing of the interests of the natural parents, the adoptive parents, the adopted child, and society to the court system, and not to private parties. *See Golan v. Louise Wise Servs.*, 69 N.Y.2d 343, 514 N.Y.S.2d 682, 685, 507 N.E.2d 275, 277–78 (1987) (discussing the importance of this balancing, emphasizing that "access to confidential adoption records may be granted only after the utmost care and attention"). Parties may not circumvent the statutory scheme with their own private agreements. In *Walker*, 64 N.Y.2d 354, 486 N.Y.S.2d 899, 476 N.E.2d 298, the New York Court of Appeals refused to enforce a provision in a natural parent's will bequeathing certain adoption decrees that would have identified the natural mother to the adopted children. The Court of Appeals refused to enforce the provision, finding that "[d]isclosure violates the existing public policy of New York, however, and the machinery of the courts is not available to them for that purpose." The result is the same here where the plaintiff seeks to enforce alleged contracts, the substance of which would allow disclosure without following the statutory scheme required by the New York State Legislature.

It is clear that the alleged contracts violate public policy because they do not require the plaintiff to demonstrate "good cause" to a state court to obtain information about her natural mother, as Dom.Rel.L. § 114 requires. Indeed, in this case the plaintiff claims that she wanted to receive information about her mother because "she became consumed with the desire to learn the identity of her natural mother." (Compl. at ¶ 16.) The determination of good cause is for the courts and not private parties. In any event, the New York Court of Appeals has stated that this does not constitute "good cause": the

"mere desire to learn the identity of one's natural parents cannot alone constitute good cause, or the requirement of section 114 would become a nullity." *In the Matter of Linda F.M.*, 52 N.Y.2d at 240, 437 N.Y.S.2d 283, 418 N.E.2d 1302.

Accordingly, the plaintiff's contract claims must be dismissed because they are untimely and because the underlying contracts are void as contrary to the public policy of the State of New York. The claim based on the 1968 contract must also be dismissed under the Statute of Frauds.

## II.

The defendant argues that the plaintiff's tort claims should be dismissed because they are untimely and because they fail to state a claim upon which relief can be granted.

### A.

The plaintiff asserts claims for intentional or negligent failure to provide information, negligent misrepresentation, intentional or negligent infliction of emotional distress, and per se negligence. The defendant argues that these causes of action accrued in August 1988 when the plaintiff alleges she met with a representative of Spence–Chapin and was given only non-identifying information about her natural mother. All of the plaintiff's torts claims are subject to either a one-year or three-year statute of limitations. *See* N.Y.Civ.Prac.L. & R. §§ 214, 215(3). The plaintiff does not contest that her tort claims accrued in 1988 but contends, as she did with respect to her contract claims, that the defendant is equitably estopped from asserting the statute of limitations as a defense to these claims.

As explained above, the doctrine of equitable estoppel does not apply in this case. Accordingly, the defendant is not estopped from asserting the statute of limitations as a defense, and the plaintiff's tort claims must be dismissed as untimely.

### B.

■ Because the plaintiff's tort claims are dismissed as untimely, it is unnecessary to determine whether the plaintiff has stated a claim for failure to disclose information, negligent misrepresentation, intentional or negligent infliction of emotional distress, and per se negligence. The Court notes, however, that New York State's strong public policy in favor of confidentiality in the adoption process, as discussed above, indicates that the plaintiff has not stated any tort causes of action against the defendant. To find otherwise would allow a plaintiff to circumvent the careful statutory scheme which requires confidentiality absent a court order issued after a showing of good cause. It would establish tort claims to enforce a duty which the Legislature has precluded and no court has recognized. To the extent that the plaintiff argues that this case is unique because of the contract claims against the defendants, those contracts are void as against public policy and cannot be the source of a duty to disclose. There being no duty to disclose, there could no tort for failure to disclose or for negligence.

## III.

■ Finally, the defendant is correct that there is no independent cause of action for punitive damages. Because all of the plaintiff's other claims have been dismissed, the plaintiff's claim for punitive damages must be dismissed as well. *See, e.g., Weir Metro Ambu–Service, Inc. v. Turner,* 57 N.Y.2d 911, 456 N.Y.S.2d 757, 442 N.E.2d 1268 (1982).

## CONCLUSION

For the reasons stated above, the defendant's motion to dismiss the complaint in its entirety is **GRANTED**. The Clerk is directed to enter judgment dismissing this action.

**SO ORDERED.**